Abdus–Shahid M.S. ALI, Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 00–5282.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 3, 2001.

Decided Jan. 29, 2002.

Robert N. Weiner, appointed by the court, argued the cause and filed the briefs as amicus curiae for appellant.

Abdus–Shahid M.S. Ali, appearing pro se, was on the briefs for appellant.

Mark R. Davis, Senior Assistant Attorney General, State of Virginia, argued the cause and filed the brief for appellees Commonwealth of Virginia, et al.

Robert R. Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Carl J. Schifferle, Assistant Corporation Counsel, filed the brief for appellees District of Columbia, et al.

Before: GINSBURG, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A District of Columbia inmate claims that following his transfer from the District's Lorton Correctional Facility to a Virginia prison pursuant to an interstate compact, Virginia officials used excessive force in restraining him, required him to register under his birth name rather than his religiously inspired legal name, and neglected to give him the insulin he required, resulting in his leg becoming dangerously infected. The inmate also claims that the District denied him access to the courts by failing to transport certain legal documents with him to the Virginia prison, sending them instead to his home. The inmate filed suit in the United States District Court for the District of Columbia, naming as defendants the Commonwealth of Virginia, various Virginia officials, the District of Columbia, various District officials, and the Attorney General of the United States. Affirming the district court's dismissal of the complaint, we find that (1) all claims against Virginia, its agencies and its officers in their official capacities are either barred by sovereign immunity or mooted by the inmate's transfer back to a District prison, (2) the dis-

trict court lacked personal jurisdiction over Virginia officials in their personal capacities, (3) the inmate lacks standing to bring a denial of court access claim, and (4) neither the District nor its officials can be held liable for torts committed by Virginia officials.

## I.

Appellant Abdus–Shahid M.S. Ali is a District of Columbia inmate serving concurrent sentences for first-degree murder convictions in 1964 and again in 1986. Ali's claims arise from his April 1999 transfer from the District's Lorton Central Facility, located in Lorton, Virginia, to Virginia's Sussex II prison in Waverly, Virginia. The transfer took place pursuant to a contract, authorized by the Interstate Corrections Compact, VA.CODE ANN. § 53.1–216; D.C.CODE ANN.§ 24–1001, between the District of Columbia Department of Corrections and the Virginia Department of Corrections.

According to Ali, during a strip-search undertaken in preparation for his transfer, Virginia prison official D. Davis "hit [him] in the stomach," prompting Ali to punch Davis, at which point several other officers leapt on Ali and wrestled him to the ground. Compl. ¶¶ 10–11. Ali claims that his "face was swollen up and at least four teeth were loosened of which one had to be pulled...." Pl.'s Opp'n. to Va. Defs.' Mot. to Dismiss ¶ 30.

Ali also contends that Virginia prison officials humiliated him when, after he arrived at Sussex II, they held a stun gun to his head and forced him to register under his birth name, James C. Long, rather than his legal name, Abdus–Shahid M.S. Ali. Although originally convicted under his birth name, Ali changed his name in 1979 for religious reasons. According to Ali, not only did he find the registration under his birth name religiously offensive, but as a result of his incarceration under the name James Long, Sussex II officials neglected for fifteen days to give him the insulin shots required to treat his diabetes. Sussex II medical staff apparently confused another inmate's file, labeled "James Long #268–200" and containing no diabetes diagnosis, with Ali's file, labeled "Ali #136–476." Compl.¶ 16. As a result of this "medical malpractice," Ali alleges, his fingers became "numb," Compl. ¶¶ 16,17, and his right leg, which became infected, "burst open" and "may (in time) ... require amputation," Pl's Opp'n. to Va. Defs.' Mot. to Dismiss ¶ 11.

Finally, Ali contends that District prison officials "forced him" to send certain legal documents home rather than transporting them along with his other belongings to the Sussex II prison. Compl. ¶ 22. As a result, he experienced a "set-back" in litigation pending in the District of Columbia Superior Court. Compl. ¶ 23.

Based on these allegations, Ali filed suit in the United States District Court for the District of Columbia against three categories of defendants: (1) the Commonwealth of Virginia and the Virginia Department of Corrections, as well as the Attorney General, the Governor, the Chief Warden of the Sussex II State Prison, and Corrections Officer D. Davis in their personal and official capacities; (2) the Mayor of Washington, D.C., the Warden of the Lorton Central Facility, and the District of Columbia Department of Corrections; and (3) the Attorney General of the United States. While Ali's handwritten complaint contains many claims, he alleges essentially four causes of action: (1) that corrections officers used excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment; (2) that the denial of insulin also violated his Eighth Amendment rights; (3) that forcing him to sign his birth name violated the First

Amendment and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb–4; and (4) that the failure to transfer all his legal papers to the Virginia prison violated his First Amendment right to court access.

The district court dismissed Ali's complaint with prejudice. With respect to his claims against the Virginia defendants (except for the claim relating to the use of his birth name), the court concluded that Ali failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). As to the birth name issue, the district court held that "the mere fact that correctional authorities maintain an inmate's records in the name he used when convicted implicates no constitutional right." *Ali v. District of Columbia*, No. 99–1348, slip op. at 5 (D.D.C. July 11, 2000). Finding the claims against the District defendants and the Attorney General of the United States based on the actions of Virginia prison officials, the district court dismissed these claims as well. The district court also noted that "to the extent" Ali sought "injunctive and declaratory relief," such claims were "moot" in light of Ali's "transfer[ ] back to Lorton." *Id.* at 4.

■ Ali, supported by the amicus we appointed, now appeals the dismissal of his two Eighth Amendment claims (excessive force and denial of insulin), his First Amendment and RFRA claims (use of his birth name) and his access to court claim. Our review is de novo. *See Moore v. Valder*, 65 F.3d 189, 192 (D.C.Cir.1995) (reviewing "de novo a dismissal for failure to state a claim upon which relief can be granted").

## II.

We begin with Ali's claims against the Virginia defendants. According to Virginia, the district court lacked subject matter jurisdiction because Ali failed to exhaust his administrative remedies as required by the PLRA. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought ... until such administrative remedies as are available are exhausted."). Virginia argues that although Ali filed a complaint pursuant to the prison's grievance procedures, because he filed suit before those procedures were completed, he failed to exhaust his administrative remedies. *See Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C.Cir.2001) (holding that remedies must be exhausted at the time the complaint is filed). Alternatively, Virginia argues that the doctrine of sovereign immunity bars Ali's claims against the Commonwealth and its officials in their official capacities and that the district court lacked personal jurisdiction over the individual defendants in their personal capacities.

■ We start, as we generally do, by making sure we possess subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88, 119 S.Ct. 1563, 1571–72, 143 L.Ed.2d 760 (1999) (explaining that courts generally address subject matter jurisdiction even before personal jurisdiction unless the subject matter question raises a "difficult and novel" question of law). Virginia's subject matter jurisdiction argument depends on reading the PLRA's exhaustion requirement as a jurisdictional bar. Although we have never directly ruled that the requirement is not jurisdictional, in *Jackson* we rejected inmates' argument that the defendants had waived their exhaustion defenses, 254 F.3d at 267 (D.C.Cir.2001), an issue we never would have considered if exhaustion were jurisdictional. Removing any doubt, we now hold, as has every circuit to have considered the matter, that the PLRA's exhaustion requirement simply "governs the timing of the action" and

does not contain the type of " 'sweeping and direct' " language that would indicate a jurisdictional bar rather than a "mere codification[ ] of administrative exhaustion requirements." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir.2000) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 2462–63, 45 L.Ed.2d 522 (1975)). *See also Wright v. Hollingsworth*, 260 F.3d 357, 358 n. 2 (5th Cir.2001) ("The 42 U.S.C. § 1997e exhaustion requirement is not jurisdictional."); *accord Basham v. Uphoff*, No. 98–8013, 1998 WL 847689, at *3 (10th Cir. Dec.8, 1998); *Massey v. Helman*, 196 F.3d 727, 732 (7th Cir.1999); *Rumbles v. Hill*, 182 F.3d 1064, 1067 (9th Cir.1999); *Nyhuis v. Reno* 204 F.3d 65, 69 n. 4 (3d Cir.2000); *Curry v. Scott*, 249 F.3d 493, 501 n. 2 (6th Cir.2001).

■ Having found the PLRA's exhaustion requirement not jurisdictional, we have no reason to consider the merits of the Virginia defendants' exhaustion defense because Ali's claims against them are barred on other grounds: sovereign immunity and lack of personal jurisdiction. As to the first, the Eleventh Amendment bars all suits in federal court against a state by citizens of another state. *See* U.S. Const. Amend. XI. When plaintiffs sue state officials in their official capacities for monetary damages, the suits are, in substance, suits against the state and also barred by sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Congress may abrogate state sovereign immunity through a legitimate exercise of its Fourteenth Amendment, section five, enforcement powers. *Alden v. Maine*, 527 U.S. 706, 756, 119 S.Ct. 2240, 2267, 144 L.Ed.2d 636 (1999). States can also waive their sovereign immunity, but "we will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room

for any other reasonable construction." *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361 (citation and internal quotations omitted).

Applying these principles to this case, we note first that it makes no difference that Ali may be a District of Columbia resident rather than a citizen of "another state," as the Eleventh Amendment provides. *See* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3618, at 568–70 (2d ed.1984) (General rule is that prisoner retains residency had at time of incarceration). In *Alden v. Maine*, the Supreme Court held that "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, ... [it] is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the Convention or certain constitutional Amendments." 527 U.S. at 713, 119 S.Ct. at 2247. *Cf. also Hans v. Louisiana*, 134 U.S. 1, 5, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (holding despite the literal language of Eleventh Amendment that the doctrine of sovereign immunity bars suit in Federal Court against a state by a citizen of that same state.)

■ The question, then, is whether Ali has pled a cause of action arising under a federal statute that abrogates Virginia's sovereign immunity. He has not. RFRA does not apply to the states, *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997), and the Supreme Court has held that section 1983 does not abrogate state sovereign immunity, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Nor has Virginia waived its sovereign immunity simply because the Interstate Corrections Compact, adopted by the Commonwealth,

provides that "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." VA.CODE ANN. § 53.1–216, Article IV(e); *see also id.* at Article I (defining "state" as including the District of Columbia). Not only does this language fall far short of the required "most express waiver," *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361, but we see no basis for finding that the "overwhelming implication," *id.,* of the Compact's text is that Virginia intended to waive sovereign immunity. Even assuming the Compact creates rights enforceable by individual inmates, the Compact says nothing about how inmates may enforce these rights. A "reasonable construction," *id.,* of the Compact would suggest that Virginia intended inmates to vindicate any rights through the traditional methods of either prospective injunctive relief against Commonwealth officials, *see id.* at 664, 668, 94 S.Ct. at 1356, 1358 (holding Eleventh Amendment bars "equitable restitution" but not prospective injunctive relief having only an "ancillary effect on the state treasury"), or damage suits against Commonwealth officials in their personal capacities, *see Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 364–65, 116 L.Ed.2d 301 (1991) ("Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983" (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974))), neither of which requires waiver of sovereign immunity. *See Alden,* 527 U.S. at 732, 119 S.Ct. at 2255–56 (noting the difference between the existence of a legal right under Federal law and the "implementation of the law in a *manner* consistent with the constitutional sovereignty of the States" (emphasis added)). We thus conclude that the doctrine of sovereign immunity bars Ali's claims against the Commonwealth of Virginia and the Virginia Department of Corrections, as well as his claims against the Attorney General, the Governor, the Chief Warden of the Sussex II State Prison and Officer Davis to the extent that Ali seeks damages from these individuals in their official capacities.

█ Because the district court found all claims for injunctive relief moot in light of Ali's return to the Lorton facility and because Ali does not appeal this determination, the next question with respect to the Virginia defendants is whether the district court had personal jurisdiction over the individual officials in their personal capacities. Amicus argues that jurisdiction is proper under the District of Columbia long-arm statute because the defendants either "transact[ed]" business in the District, "contract[ed]" to do so, or "caus[ed] tortious injury in the District . . . by an act or omission outside the District. . . ." D.C.CODE ANN. § 13–423(a)(1), –(2), –(3). We disagree. Nowhere in his complaint does Ali allege that any defendants acting in their individual capacities either transacted business in the District or contracted to do so. It is true, as amicus points out, that Virginia has contracts with the District, makes reports to the District concerning District inmates it houses, and receives money from the District. Virginia officials, however, undertake all such actions in their official capacities. In addition, because the District's Lorton facility, the site of the alleged assault, is located in Virginia, no tortious acts took place in the District.

## III.

█ Turning to the remaining defendants, we begin with Ali's court access claim against the District of Columbia defendants, the only claim not based on the

actions of Virginia officials. To maintain a court access claim, an inmate must demonstrate "actual injury," that is, the inmate must show "that an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented. . . ." *Lewis v. Casey*, 518 U.S. 343, 356, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996). This Ali has failed to do. He alleges neither that he actually lost any otherwise valid legal claim nor that he is unable to raise such a claim in any other proceeding. He alleges only that he has an "open case" in the District of Columbia Superior Court that has been "set back." Compl. ¶ 23. Without more, this claim is insufficient to give rise to Article III standing. *See, e.g., Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir.1982) (mere delay in filing papers in court not enough to establish actual injury to court access if papers ultimately filed or accepted and considered by court).

■ Ali's remaining claims against District officials—his Eighth Amendment and religious freedom claims—all rest on the actions of Virginia officials. In *Monell v. New York City Dep't of Social Servs.*, the Supreme Court, interpreting section 1983, held that while the word "person" includes a municipality, the phrase "any person who . . . subjects . . . any citizen" implies a strict causal relationship. Accordingly, the Court held that plaintiffs suing municipalities under section 1983 may not rely on a respondeat superior theory; rather, they must show that municipality agents or employees acted "pursuant to official municipal policy of some nature." *Monell*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Ali makes no allegation that could give rise to liability under *Monell*. For example, although he claims mistreatment by Virginia officials, Ali never alleges that the District had a policy of sending inmates to Virginia prisons that routinely mistreat inmates. *See, e.g., Jackson v. District of Columbia*, 254 F.3d 262, 265 (D.C.Cir.2001) (inmates alleged that the District had a practice of sending them to prisons with grooming policies that violated their religious beliefs). Amicus argues that *Monell* is inapplicable to this case because the Virginia officials acted as agents for the District. *Monell*, however, expressly states that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees *or agents.*" *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037 (emphasis added).

■ Ali's failure to state a section 1983 claim against the District defendants does not end our inquiry, for while Ali's complaint states no RFRA claim against the District, amicus argues that he constructively amended his complaint to include such a claim by citing the statute in his Opposition to the Virginia Defendants' Motion to Dismiss. Even construing Ali's pleadings "liberally," *Richardson v. United States*, 193 F.3d 545, 548 (D.C.Cir.1999), and assuming that he "recognized the need" to amend his complaint, *id.* at 549, we think a single citation to RFRA in a filing responding to *Virginia's* motion to dismiss insufficient to put the *District* on notice that it faced a RFRA claim. *See Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983) (holding that complaint must give "defendant fair notice of the plaintiff's claim and the grounds upon which it rests"). Indeed, even the district court seems not to have realized that Ali intended to raise a RFRA claim against the District of Columbia. *See Ali*, No. 99–1348, slip op. at 2–4. Under these circumstances, we decline to find that Ali constructively amended his complaint to state a RFRA claim against the District and its officials.

Finally, we reject Ali's claims against the Attorney General of the United States.

The district court's reasons for dismissing these claims are entirely correct.

## IV.

Amicus argues that if Ali can sue neither District nor Virginia officials, the District, by "transferring prisoners to other states," can "deprive them of remedies for constitutional violations." Amicus's Reply at 12. Not so. Although we affirm the district court's dismissal with prejudice of all claims against the Virginia officials in their individual capacities, we emphasize that this action merely "acts as res judicata for the jurisdictional issue." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999). Thus, nothing in either this opinion or the actions of the district court prevents Ali from filing suit against Virginia officials in their personal capacities in the appropriate federal district court in Virginia. This is precisely the remedy that section 1983 gives every Virginia inmate, whether transferred from the District or not.

The decision of the district court is affirmed.

*So ordered.*