Roger E. **CLINE**, Plaintiff,

v.

William M. **FOX**, Warden, and James **Rubenstein,** Commissioner, Defendants.

No. CIV.A. 100CV175.

United States District Court, N.D. West Virginia.

Sept. 12, 2003.

Robert M. Bastress, Esquire, WVU College of Law, Morgantown, Counsel for Plaintiff Roger E. Cline.

Barry L. Koerber, Esquire, Assistant Attorney General, Charles Houdyschell, Esquire, Assistant Attorney General, Jendonnae L. Houdyschell, Attorney General Office, Daynus Jividen, Esquire, Senior Assistant Attorney General, WV Division of Corrections, Charleston, Counsel for Defendant William M. Fox, Warden.

Barry L. Koerber, Esquire, Assistant Attorney General, Charleston, Counsel for Defendant James Rubenstein, Commissioner.

## ORDER

KEELEY, District Judge.

This matter comes before the Court on the plaintiff's Motion to Reconsider the Court's March 19, 2003 Order. The motion is fully briefed and ripe for review. For the following reasons, the Court grants the plaintiff's motion.

### BACKGROUND

Plaintiff Roger Cline (Cline) is an inmate at the St. Mary's Correctional Center, an institution within the West Virginia Division of Corrections (DOC), who has a preference for reading graphic, adult-oriented books. He brought this lawsuit under 42 U.S.C. § 1983 when the defendants, referencing a DOC Policy Directive that bans obscene material,[1] suddenly prevented him from possessing or receiving his books. In his complaint, Cline challenged

---

**1.** West Virginia DOC Policy Directive 503.00, which states in pertinent part:

Publications which pose a direct, clear and immediate danger to security, or which are obscene by depicting explicit sexual activity may be prohibited. (Policy Directive 503.00(V)(N)).
*Obscene Material:* Periodicals, magazines, books, pamphlets, photographs, paintings, photocopies, sculpture or other graphic representation which are obscene because *they depict explicit sexual activity.* Explicit sexual activity is defined as sexual intercourse, anal intercourse, fellatio, cunnilingus, bestiality, bondage/Sadism and Masochism or material of an explicit sexual nature involving minors. (Policy Directive 503.00(III)).

both the defendants' application of DOC Policy Directive 503.00 (the as-applied challenges), as well as the constitutionality of DOC Policy Directive 503.00 itself (the facial challenge).

During the discovery phase of this case, Cline gave an answer to an interrogatory indicating that his preferred books were shelved in the St. Mary's Reading Library. Defendant William Fox, Warden at St. Mary's, responded to this disclosure by closing the Reading Library and instructing Deputy Warden Sandy Tanczyn to review the library's contents and remove any material that violated the obscenity ban in DOC Policy Directive 503.00. Tanczyn formed an ad hoc staff of unit managers, counselors, case managers, and office assistants to individually read every book in the library. She distributed copies of Policy Directive 503.00 to the staff members, and instructed them to purge anything containing language that "could be derived as a sexual turn-on, according to the policy directive." When a staff member asked a question about what to do, Tanczyn simply pointed to the Policy Directive and told them to do the job "like the policy says." Tanczyn admits that her specific direction to eliminate any book that contained language that might arouse the reader was her own interpretation of the Policy Directive, and not Warden Fox's interpretation.

The entire Reading Library review was completed in approximately two months. At the end, the staff had purged 259 of the 1226 volumes, nearly 21% of the library's total inventory. Among the books pulled were William Styron's *Sophie's Choice,* Gore Vidal's *Myra Breckenridge,* and a number of works by John Updike.

Cline immediately amended his complaint on October 31, 2001, alleging that the defendants' act of purging the library was a violation of his rights under the First and Fourteenth Amendments of the United States Constitution (the library purge claim).

### The March 19, 2003 Order.

The Court disposed of all the issues in this case in its Order of March 19, 2003, when it granted the defendants' motion for summary judgment on the merits of Cline's original as-applied challenges, acknowledged Cline's abandonment of his facial challenge, and dismissed his late-added library purge claim because he had failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a).

Cline now seeks reconsideration of the Court's ruling with respect to the library purge claim.

### Cline's Grievance of the Library Purge.

Since the filing of the Motion to Reconsider, Cline has grieved the library purge claim within the West Virginia Division of Corrections.

West Virginia Code § 90–9–3 generally requires inmates to grieve any complaints within the DOC. The inmate must first complete a "G–1 Grievance Form" and submit it to his Unit Manager or Staff Supervisor within 15 days "of any occurrence that would cause him/her to file a grievance." *See, generally,* W. Va.Code § 90–9–3.1. If the Unit Manager or Staff Supervisor fails to resolve the issue, the inmate must fill out a "G–2 Grievance Form" and submit it to the Warden. *See, generally,* W. Va.Code § 90–9–3.2. If the inmate remains unsatisfied after the Warden has weighed in on the situation, he may lodge an appeal with the Commissioner. *See, generally,* W. Va.Code § 90–9–3.3.

The attachments to Cline's Supplemental Memorandum in Support of Plaintiff's Motion for Reconsideration indicate that Cline has completed these steps. On March 27, 2003, he submitted his G–1 form to Unit Manager Sandy Tanczyn, express-

ly challenging "the prison's policy that any book's [sic] containing any erotic passage may not be placed in the reading library." Tanczyn responded the next day, stating: "Mr. Cline, I cannot grant the relief you are requesting because of policy. You have the right to challenge this Policy but unless it is changed there is nothing I can do."

Cline filled out his G–2 form and submitted it to Warden Fox on March 28, 2003, again challenging the policy and asking that the books be returned to the reading library. Warden Fox rejected Cline's grievance the same day, stating:

> I have reviewed your G–2 Grievance pertaining to the Reading Library, and I find the following:
>
> You have failed to follow Policy Directive 335.00 by not presenting your issue in a timely manner. You have fifteen (15) days to present your issues which means you have failed to comply with Policy Directive 335.00.
>
> Therefore, Mr. Cline, I am rejecting your G–2 Grievance.

Cline appealed to Commissioner Rubenstein on April 1, 2003. Senior Inmate Grievance Coordinator Beverly Gandee responded for Commissioner Rubenstein on April 24, 2003, stating:

> This correspondence is returned to you because your correspondence does not demonstrate that you have applied for relief pursuant to policy. Warden William Fox advised you on March 28, 2003 that your grievance was rejected because it was untimely. Commissioner

Rubenstein concurs with Warden Fox's explanation and subsequent rejection of your grievance. Unless you follow the proper procedures, the Division of Corrections cannot give consideration to the merits of your request. Your correspondence is therefore rejected and returned without consideration.

> This letter does not evidence exhaustion of administrative remedies, but evidences that you have not complied with the administrative remedies available to you.

### ANALYSIS

42 U.S.C. § 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has held that this section requires an inmate challenging his conditions of confinement to exhaust all administrative remedies before filing an action in district court. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.").

■ This mandate, however, is not jurisdictional. Despite the fact that every circuit court that had considered the issue concluded that the exhaustion requirement of § 1997e(a) was not jurisdictional,[2] in

---

**2.** *See Ali v. District of Columbia*, 278 F.3d 1, 5–6 (D.C.Cir.2002) ("[T]he PLRA's exhaustion requirement simply governs the timing of the action and does not contain the type of sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements."); *Wright v. Hollingsworth*, 260 F.3d 357, 358 n. 2 (5th Cir.2001) ("The 42 U.S.C. § 1997e exhaustion requirement is not

jurisdictional and may be subject to certain defenses such as waiver, estoppel or equitable tolling."); *Curry v. Scott*, 249 F.3d 493, 501 (6th Cir.2001) ("[W]hile it is true we have concluded § 1997e does not impose a jurisdictional bar to federal jurisdiction, we have also concluded that the obligation to exhaust administrative remedies before resort to federal court is a mandatory one."); *Foulk v.*

*Porter,* the Supreme Court did not speak in jurisdictional terms. Indeed, the only circuit court to consider the impact of *Porter*'s language on federal jurisdiction concluded that the "mandat[e]" did not present a jurisdictional bar. *See Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir. 2002) (post-*Porter*) ("[W]e join the chorus of voices concluding that exhaustion is not a prerequisite to federal jurisdiction.").

Even though the exhaustion requirement of § 1997e(a) is not jurisdictional, it is "mandatory" for a reason:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Booth,* 532 U.S., at 737, 121 S.Ct. 1819. In other instances, the internal review might "filter out some frivolous claims." *Ibid.* And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. *See ibid.; see also Madigan,* 503 U.S., at 146, 112 S.Ct. 1081.

*Porter,* 534 U.S. at 524–25, 122 S.Ct. 983. Thus, a district court must dismiss actions containing unexhausted claims so that the prison can either resolve the issue on its own, or create a more complete record for the district court to examine when reviewing the prison official's decision.

The transpiration of events in this case has satisfied the congressional policies that mandate compliance with 42 U.S.C. § 1997e(a). The defendants were given the opportunity to resolve Cline's complaint internally when he filed his grievance forms and appeals. Unfortunately, after going through this process, Cline is unsatisfied with the result and his claim remains.

Cline's use of the West Virginia DOC grievance process has produced an administrative record that, while not probative of the merits of Cline's claim, bears on the present motion. This record suggests the defendants' belief that Cline's failure to obtain relief in the grievance process renders his claim unexhausted.

But the United States Supreme Court, not the West Virginia Division of Corrections, is the final authority on the definition of exhaustion under § 1997e(a). The Supreme Court squarely addressed this issue in *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). There, the plaintiff, Pennsylvania inmate Timothy Booth, claimed that certain correctional officers violated his Eighth Amendment rights when they assaulted him, handcuffed him, threw cleaning supplies at him, and denied him medical attention. 532 U.S. at 734, 121 S.Ct. 1819.

*Charrier,* 262 F.3d 687, 697 (8th Cir.2001) ("failure to exhaust administrative remedies under § 1997e(a), as amended by the PLRA, does not deprive federal courts of subject matter jurisdiction"); *Nyhuis v. Reno,* 204 F.3d 65, 69 n. 4 (3d Cir.2000) ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction."); *Perez v. Wisconsin Dep't of Corrections,* 182 F.3d 532, 535 (7th Cir.1999) ("Failure to exhaust administrative remedies does not deprive a court of jurisdiction."); *Rumbles v. Hill,* 182 F.3d 1064, 1067–68 (9th Cir.1999) ("We ... hold that section 1997e(a) simply codifies the administrative exhaustion doctrine that is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking.") (internal quotation marks omitted).

Booth filed an initial complaint form, in accordance with the prison's internal administrative grievance process, seeking both injunctive and monetary relief, even though the prison could not provide the money he requested. *Id.* Before completing the grievance process, Booth filed his § 1983 complaint in federal court seeking only money damages. *Id.* The district court dismissed for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a), and the Third Circuit affirmed. *Id.* at 735.

The Supreme Court granted certiorari to resolve the circuit split between those circuits requiring exhaustion under 42 U.S.C. § 1997e(a) only where the prison's administrative process could provide the specific relief sought by the inmate, and those circuits requiring exhaustion in all cases, regardless of the relief sought. 532 U.S. at 735, 121 S.Ct. 1819.

Stating that "[t]he meaning of the phrase 'administrative remedies ... available' is the crux of the case," the Supreme Court framed the issue as "whether or not a remedial scheme is 'available' where ... the administrative process has authority to take *some* action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." *Id.* at 736, 121 S.Ct. 1819 (emphasis added).

After discussing the parties' proffered interpretations of the critical language, Justice Souter, writing for a unanimous court, stated that "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained. While the modifier 'available' requires the possibility of some relief for the

action complained of ..., the word 'exhausted' has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered." *Id.* at 739, 121 S.Ct. 1819. In short, "one 'exhausts' processes, not forms of relief." *Id.*

■ Cline has filed the three forms required under West Virginia Code § 90–9–3, and has therefore exhausted his administrative remedies with respect the library purge claim.[3]

Thus, the technical and prudential barriers presented by Cline's earlier failure to exhaust have been swept away, and only one issue remains: whether the Court should penalize Cline for his failure by making him re-file his claim. Put another way, the Court could force Cline to re-file his complaint, re-apply for the *in forma pauperis* fee exemption, request appointed counsel again, file all the necessary pleadings, and then move on to the merits of his library purge claim. Or the Court could simply schedule a status conference and set a schedule for hearing and deciding the merits. The Court chooses the latter option, and in doing so chooses to avoid what would otherwise be a gross waste of both the parties' and the Court's time and resources.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the plaintiff's Motion to Reconsider (dkt. no. 60) and retains jurisdiction over this case. The Clerk will contact counsel of record to schedule a status conference in the near future.

It is so **ORDERED.**

---

**3.** The Court notes that the statutory source compelling the defendants' statement that Cline has not exhausted his administrative remedies does not strip them of any power they otherwise have to provide some form of relief. *See* W. Va.Code § 90–9–3.6.2 ("Any inmate who fails to fully comply with the provisions set forth in this rule shall not be considered to have taken full advantage of administrative remedies afforded him or her.").

The Clerk is directed to transmit copies of this Order to counsel of record.