Jibril IBRAHIM, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. 00–2118 (RJL).

United States District Court,
District of Columbia.

Aug. 17, 2004.

Jibril L. Ibrahim, White Deer, PA, Pro se.

David A. Hyden, Office of Corporation Counsel, D.C., Washington, DC, Christopher Garrett Hill, Office of the Attorney General, Richmond, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the defendants' motions to dismiss the *pro se* plaintiff's 42 U.S.C. § 1983 complaint, which alleges that he was subject to a variety of constitutional deprivations while incarcerated in a Virginia state prison. Defendants Ronald Angelone, Director of the Virginia Department of Corrections ("VDOC"), Eddie Pearson, Warden of the Sussex II State Prison, and eight other individuals or entities employed by the VDOC[1] (the "Virginia defendants") move for dismissal of the complaint based on a lack of personal jurisdiction because all allegedly unlawful acts were committed wholly within the Commonwealth of Virginia. Defendants District of Columbia and Hulon Willis, District of Columbia Contract Monitor for Sussex II, (the "District of Columbia defendants"), move for dismissal on the grounds that the plaintiff fails to state a claim for relief under either § 1983 or D.C.Code Ann. § 24–1001 for the alleged constitutional violations. For the following reasons, the Court GRANTS both the Virginia and District of Columbia defendants' motions to dismiss.

### Factual Background

The claims in this case arise from alleged constitutional violations that occurred while the plaintiff, Grant Anderson,

---

1. The plaintiff also names the following ten Virginia defendants in his complaint: E.T. Turner, R. Robinson, R. White, D. Kriiegel, Rufus Fleming, Maj. Gilmore, Spectrum Medical Services, Joann McCarthy, Sgt. Brown, and Cpl. Thomas.

a/k/a/ Jibril Ibrahim ("Ibrahim") was incarcerated at the Sussex II State Prison ("Sussex II") in Sussex County, Virginia. Ibrahim is a District of Columbia inmate currently serving sentences of fifteen years to life imprisonment for assault with intent to rape, assault on a police officer, and receiving stolen property. Ibrahim was originally incarcerated at the District of Columbia's Lorton facility in Waverly, Virginia. On January 26, 1999, Ibrahim was transferred to Sussex II State Prison ("Sussex II") in Sussex County, Virginia under a Correction Services Contract between VDOC and the District of Columbia.[2] He was subsequently transferred to another facility in White Deer, Pennsylvania.

On August 31, 2000, Ibrahim filed this action under 42 U.S.C. § 1983, alleging various constitutional violations by the Virginia and District of Columbia defendants while he was incarcerated at Sussex II. His claims fall into three categories: (1) alleged Eighth Amendment violations, (2) alleged denial of access to the courts and legal resources, and (3) alleged religious discrimination in violation of the First Amendment, the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, and the Virginia Bill of Rights.

## I. Eighth Amendment Claims (Counts II, III, IV, VIII, X)

Ibrahim asserts six separate Eighth Amendment claims in his complaint. In Count II, he alleges that on October 27, 1998, he was unlawfully reclassified under a "prospective" Virginia law allowing his confinement to be raised to maximum security. He cites Virginia regulation DOP § 823.7.1 and asserts that the VDOC "arbitrarily utilized a prospective regulation...discretionary and mandatory overrides to increase [his] security level..."

In Count III, Ibrahim alleges that on January 26, 1999, the day he arrived at Sussex II, he was escorted to a holding room by a prison officer armed with a taser gun and was forcibly injected with an "unknown substance" that caused him to suffer hot flashes, rapid heartbeats, and nausea.

In Count IV, Ibrahim alleges that on July 8, 1999 he was denied medical treatment for heat stroke, which resulted in his "fear of imminent death, physical and psychological trauma." He claims that he became overheated while serving as a teacher's aide in a classroom and when he notified a prison officer, he was told that a medical service provider would only see him if he filed an emergency medical grievance. According to Ibrahim, although he subsequently filed a grievance, medical personnel never came to see him.

In Count VII, Ibrahim makes the general allegation that prison officials condoned "unreasonable and inhumane treatment" when they required twenty-three hour lockdown, allowed only five minute showers, segregated him for minor infractions, served him processed foods, failed to monitor his hypertension, and restricted his attorneys' calls by requiring them to submit their social security numbers in order to speak with him.

In Count VIII, Ibrahim alleges that prison officials "gassed" him and approximately thirty other prisoners during trans-

2. Under the Interstate Corrections Compact ("ICC"), D.C.Code Ann. § 24–1001, the District of Columbia may enter into contracts to house its inmates at privately operated facilities, as well as facilities operated by federal and state governments. An August 26, 1998, Correctional Services Contract between VDOC and the District of Columbia provides that VDOC will provide for the confinement and supervision of certain District of Columbia inmates at the Sussex II facility.

port from the facility in Lorton to Sussex II as a "show of authority."

Ibrahim's final Eighth Amendment claim, Count X, alleges that Spectrum Medical Services, a medical services contractor, and the District of Columbia have charged him a co-payment fees of $5 per visit for medical care.

## II. Religious Discrimination (Count I)

In Count I of the complaint, Ibrahim alleges that he is a member of the Islamic faith and experienced discrimination as a result of his religion while incarcerated at Sussex II, in violation of the First Amendment, RFRA, and the Virginia Bill of Rights. More specifically, he asserts that prison officials denied him the right to take part in religious services, to correspond with religious sponsors outside of the prison, and to wear religious "headgear" by threatening to take disciplinary action against him. He also asserts that prison officials required him to shave off his facial hair and failed to use his Islamic name.

## III. Denial of Access to the Courts (Counts V, VI)

Ibrahim also asserts that prison officials denied him access to the courts while he was incarcerated at Sussex II. In Count V, he claims that a notary public refused to notarize his motion for leave to proceed in forma pauperis, to be filed in the U.S. District Court in Maine. In Count VI, Ibrahim alleges that he was also denied access to the prison law library while he was preparing an appellate brief to be filed with the U.S. Court of Appeals for the Third Circuit. He asserts that as a result he was unable to prepare a brief and the Third Circuit dismissed his case.

The Virginia defendants move for dismissal of the complaint for lack of personal jurisdiction because these defendants are neither domiciled nor have their principal place of business in the District of Columbia. Moreover, the Virginia defendants argue that Ibrahim cannot demonstrate that this Court has personal jurisdiction under the District of Columbia long-arm statute because all of the allegedly unconstitutional acts occurred in Virginia. D.C.Code Ann. § 13–423.

The District of Columbia defendants move for dismissal of the complaint because Ibrahim has failed to plead the fundamental factual allegations necessary to support a constitutional tort action. The District of Columbia defendants further assert that Ibrahim's claims cannot be sustained because VDOC and its officials committed the acts alleged in this case, and also because Ibrahim has not alleged that the constitutional violations occurred as a result of a custom or policy of the District of Columbia, as is required for a § 1983 action against a municipality. Finally, to the extent that Ibrahim's claims are asserted against Hulon Willis, the Contract Monitor for Sussex II, in his individual capacity, the District of Columbia argues that this Court lacks personal jurisdiction.

## Discussion

### I. Standards of Review

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendants. *Crane v. N.Y. Zoological Society*, 894 F.2d 454, 456 (D.C.Cir.1990). Thus, the plaintiff must allege specific acts connecting the defendants with the forum. *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C.Cir.2001). In contrast with its analysis under 12(b)(6), the Court need not treat all of the plaintiff's allegations as true when determining whether personal jurisdiction exists over the defendants. Instead, the Court "may receive and weigh affida-

vits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris, Inc.*, 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000) (citing R. Miller, Federal Practice and Procedure § 1351 (1990)). However, the Court should resolve any factual discrepancies with regard to the existence of personal jurisdiction in favor of the plaintiff. *Crane*, 894 F.2d at 456.

The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). *Pro se* prisoner complaints should be liberally construed. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

## II. Analysis

### A. Claims Against the Virginia Defendants

Ibrahim brings claims against the Virginia defendants in both their official and individual capacities. The Virginia defendants move for dismissal of all counts brought against them in their individual capacities for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

▋ The Court will first address Ibrahim's claims against the Virginia defendants in their *official* capacity. A suit against state employees in their official capacities is treated as a suit against the state. *See Ali v. District of Columbia*, 278 F.3d 1, 6 (D.C.Cir.2002). As the Eleventh Amendment bars all suits in federal court against a state by citizens of another state, U.S. Const. Amend. XI, when plaintiffs sue officials in their individual capacities for monetary damages, as Ibrahim seeks here, their suits are, in substance, suits against the state and barred by sovereign immunity. *Ali*, 278 F.3d at 6 (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Although states may waive their sovereign immunity, courts will find waiver only where "the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347. As the Supreme Court has held that 42 U.S.C. § 1983 does not abrogate state sovereign immunity, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and RFRA (a basis for Ibrahim's religious discrimination claim) does not apply to the states, *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), this Court would only have subject matter jurisdiction if Ibrahim alleged a specific waiver by the Commonwealth of Virginia for his claims. He does not. Accordingly, the Court has no subject matter jurisdiction over Ibrahim's claims against the Virginia defendants in their official capacity.

▋ In order to bring claims against the individual defendants in their *individual* capacities, Ibrahim must demonstrate that this Court has personal jurisdiction

over them for such claims. There is no allegation that any of the Virginia defendants live in the District of Columbia or have their principle place of business here. D.C.Code Ann. § 13–422. Therefore, Ibrahim must demonstrate that there is personal jurisdiction over the Virginia defendants under the District of Columbia long-arm statute. D.C.Code Ann § 13–423. Under this long-arm statute, personal jurisdiction is proper "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's (1) transacting business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the District of Columbia." D.C.Code Ann. § 13–423.

In this case, Ibrahim asserts that personal jurisdiction exists over the Virginia defendants in their individual capacities because each "acted as an agent [on] behalf of the District of Columbia." Pl. Opp. to Virginia Def. Mot. to Dismiss 2 ("Pl. Virginia Opp."). In addition, Ibrahim argues that the incidents alleged in his complaint occurred at a District of Columbia facility.

The D.C. Circuit has previously dismissed the claims of a District of Columbia inmate against individual Virginia prison officials for lack of personal jurisdiction where all alleged contacts with the District related to actions taken in the defendants' official capacities. *Ali v. District of Columbia,* 278 F.3d 1, 7 (D.C.Cir.2002). In *Ali,* the D.C. Circuit found that the district court lacked personal jurisdiction because

although Virginia "has contracts with the District, makes reports to the District concerning District inmates it houses, and receives money from the District... Virginia officials...undertake all such actions in their official capacities" and there was no indication that the officials transacted business or provided services to the District of Columbia in their individual capacities. *Id.* Similarly, all of the acts alleged by Ibrahim to connect the Virginia defendants to this forum relate to actions taken in their official capacities, and he fails to allege that any of these defendants transacted business in the District or caused tortious injury within the District in an individual capacity. Accordingly, the Court finds that it lacks personal jurisdiction over the Virginia defendants. Based on the foregoing analysis, Ibrahim's claims against the Virginia defendants will be dismissed for lack of subject matter jurisdiction and personal jurisdiction.

### B. Claims Against the District of Columbia Defendants

The District of Columbia moves for dismissal of Ibrahim's claims on the grounds that he fails to state a claim under § 1983 for any constitutional or common law claims. In addition, the District of Columbia asserts that to the extent that Ibrahim brings claims against the lone individual District of Columbia defendant, Hulon Willis, in his individual capacity, this Court lacks personal jurisdiction for such claims.

#### 1. Section 1983 Claims

Ibrahim brings § 1983 claims against the District of Columbia defendants on the theory that even though all of the allegedly unlawful acts occurred in Virginia at the hands of Virginia officials, the District is liable under a theory of agency.

█ It is well established that a municipality cannot be held liable in a § 1983

action under a theory of *respondeat superior* for the actions of its employees or agents. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court held in *Monell* that with regard to liability under § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor..." *Id.* at 691, 98 S.Ct. 2018 (emphasis in original). It reasoned that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* Accordingly, only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694–95, 98 S.Ct. 2018.

■ The D.C. Circuit has held that a court must undertake a two-part analysis to determine whether a municipality may be held liable under § 1983. *Baker v. District of Columbia,* 326 F.3d 1302, 1306–07 (D.C.Cir.2003) ("*Baker*"); *see also Warren v. District of Columbia,* 353 F.3d 36, 38 (D.C.Cir.2004) ("*Warren*"). First, a court must determine if the plaintiff's complaint states a claim for a "predicate constitutional violation." *Baker,* 326 F.3d at 1306. This determination focuses on whether the plaintiff has alleged a constitutional harm, not whether the municipality is liable for that harm. *Id.* Second, if a violation is found, the court must then determine whether the complaint states a claim that a "policy or custom" of the municipality caused the violation. *Id.*

■ A plaintiff may establish that a municipality's custom or policy caused a violation by demonstrating that policymakers adopted a policy that was the "moving force of the constitutional violation," *Monell,* 436 U.S. at 694, 98 S.Ct. 2018, or by showing that a policymaker ignored a practice that was consistent enough to constitute a custom. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). A plaintiff may also seek to meet the "custom and policy" requirement by showing "deliberate indifference" on the part of the municipality to the risk that not addressing the need would result in constitutional violations. *Baker,* 326 F.3d at 1306.

### a. Predicate Constitutional Violations

As previously noted, Ibrahim alleges three categories of constitutional violations: (1) Eighth amendment violations based on denial of medical care, a forced injection, and failure to provide reasonable and humane treatment; (2) religious discrimination; and (3) denial of access to the courts. The Court finds that Ibrahim has made two allegations that could rise to the level of constitutional violations if proven.

■ First, in Count I, Ibrahim alleges that he was the subject of religious discrimination when he was required to shave his beard and prevented from wearing "religious headgear" by threatening him with lockdown and disciplinary actions, with the intent to prejudice his parole hearing. He also claims that he was prevented from attending religious services on Fridays and from corresponding with religious leaders outside of the prison. To establish an unconstitutional burden on religion, a plaintiff must show that "the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hobbie v. Unemployment Appeals Commission of Florida,* 480 U.S. 136, 141, 107

S.Ct. 1046, 94 L.Ed.2d 190 (1987); *see also Cockrell–El v. District of Columbia,* 937 F.Supp. 18, 21 (D.D.C.1996). As Ibrahim has alleged that he was threatened with disciplinary action as a result of his desire to engage in what he believes is conduct proscribed by his faith, the Court finds that he has pled a predicate constitutional violation for religious discrimination.

▮ Second, in Count VI, Ibrahim alleges that he was denied access to the prison law library to prepare a legal brief, and as a result, his appeal in the Third Circuit was dismissed. A prisoner has a fundamental right to access to the courts. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Prison authorities are thus required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.; see also Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Green v. District of Columbia,* 1991 WL 251936, at *4 (D.D.C. Nov. 12, 1991). To state a claim for denial of access to the courts, a prisoner must allege that the denial of access resulted in a specific injury to him (*i.e.,* dismissal of his action). *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174. As Ibrahim has alleged that the lack of library time resulted in his inability to prepare a brief, and subsequent dismissal of his case, the Court finds that he has stated a predicate constitutional violation.

▮ With regard to Ibrahim's eight other claims, the Court finds that he has not pled a predicate constitutional violation and thus fails to state a claim against the District of Columbia defendants upon which relief can be granted.

**b. Government Policy or Custom**

▮ Although Ibrahim has alleged two predicate constitutional violations, the Court finds that these claims against the District of Columbia defendants in their official capacities must nevertheless be dismissed because he fails to allege how such violations were the result of a government "policy or custom." As Ibrahim does not allege that any District of Columbia policymaker adopted a policy that was the moving force behind the alleged constitutional violations, or ignored a policy that resulted in the violations, he would have to allege that the violations were the result of "deliberate indifference." In other words, Ibrahim would have to allege that the District of Columbia defendants knew or should have known of a risk that constitutional violations would occur, and then failed to act to prevent them from occurring.

Ibrahim fails to meet even the "deliberate indifference" standard with his complaint. First, with regard to Count I, the Court finds that Ibrahim has failed to sufficiently allege that the religious discrimination he claims occurred at Sussex II was the result of deliberate indifference by the District of Columbia defendants. Even if Ibrahim had made allegations in his complaint regarding the defendants' deliberate indifference to the risk of religious discrimination against Muslims, which he did not, the exhibits he presents in support of his complaint would contradict such an allegation. For example, Ibrahim presents exhibits indicating that the prison offers services on Tuesdays for Muslims. Compl., Ex. 17 [3] (March 12, 1999 sign-up list for Sunni Muslim Services). Furthermore, Ibrahim includes a memorandum from the prison physician regarding the requirement that all inmates maintain

**3.** Ibrahim attaches seventy-eight pages of exhibits to his complaint. For the ease of reference, the Court has numbered the exhibits in the order that they were submitted.

grooming standards, such as beard-shaving, for medical, not religious, purposes. Compl., Ex. 16. In short, Ibrahim fails to make any allegation regarding actual or constructive knowledge by the District of Columbia defendants of the risk that religious discrimination would occur as Sussex II, and merely puts forth evidence that contradicts his claims. Accordingly, Count I will also be dismissed for failure to state a claim.

Second, with regard to Count VI, denial of library access to prepare his brief, Ibrahim also fails to allege that prison officials knew or should have known of the risk of the constitutional violation, but failed to act. Indeed, once again Ibrahim's own exhibits to his complaint demonstrate that when he requested library time, prison officials responded and attempted to schedule library time for him during the time he was incarcerated at Sussex II. *See, e.g.,* Compl., Ex. 44 (January 28, 1999 Inmate Request to use library, reflecting a response that a meeting was scheduled for the plaintiff with the prison attorney); Ex. 46 (March 21, 1999 Inmate Request to use the library, reflecting a response that his name has been added to the list for the library); Ex. 66 (August 13, 1999 Emergency Grievance Form, indicating that the plaintiff has been called to use the library only once since arriving at Sussex II, reflecting a response that the plaintiff could not present information to verify his court date, but that he would be added to the list for the library anyway). Accordingly, in the absence of any allegation by Ibrahim that the District of Columbia defendants knew or should have known of the risk that his rights would be violated through denial of library time, the Court will also dismiss this claim.

As Ibrahim has failed to allege that any predicate constitutional violations he suffered were the result of a municipal custom or policy, the Court will dismiss all counts of the complaint against the District of Columbia. As an action against Hulon Willis in his official capacity is treated as one against the District, all claims against him in his official capacity must also be dismissed.

## 2. Claims Against Hulon Willis in His Individual Capacity

The District of Columbia also moves for dismissal of all claims against Hulon Willis in his individual capacity for lack of personal jurisdiction. There is no indication that Willis is domiciled or has his principal place of business in the District of Columbia. D.C.Code Ann. § 13–422. Moreover, there is no allegation that Willis transacts business in or caused tortious injury in the District of Columbia, as would be required to demonstrate personal jurisdiction under the D.C. long-arm statute. D.C.Code Ann. § 13–423. Accordingly, the Court finds that it lacks personal jurisdiction over Willis in his individual capacity.

As the Court lacks subject matter jurisdiction and personal jurisdiction over the Virginia defendants, and Ibrahim has failed to state a claim or demonstrate that this Court has personal jurisdiction over the District of Columbia defendants, the Court will dismiss his complaint in its entirety.

## ORDER

For the reasons set forth above, it is this 17th day of August, 2004, hereby

**ORDERED** that the defendants' motions to dismiss [# 5, 15] are **GRANTED**; and it is further

**ORDERED** that Counts I, II, III, and IV of the complaint are dismissed without prejudice; and it is further

ORDERED that the plaintiff's motion to appoint counsel [# 14] is **DENIED.**

**SO ORDERED.**