Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 10, 2003          Decided May 2, 2003

No. 01-5205

TODD EMERSON BAKER,
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00525)

————

*Kathleen A. Ryan*, Student Counsel, argued the cause for appellant. With her on the brief were *Steven H. Goldblatt*, Director of the Appellate Litigation Program, Georgetown University Law Center, appointed by the court, *Cary Berkeley Kaye*, Supervising Attorney, and *Francisco A. Rodriguez*, Student Counsel.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Edward E. Schwab*, Assistant Corporation Counsel, argued the cause for appellee. With him on the brief was *Charles L. Reischel*, Deputy Corporation Counsel. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: When District of Columbia prisoners are transferred to the correctional facilities of a State, to what extent, if any, does the District of Columbia continue to be responsible for ensuring that the care received by such prisoners does not violate the Eighth Amendment proscription against cruel and unusual punishment? That is the question posed by Todd Emerson Baker's complaint arising from the medical care he received while serving a District of Columbia sentence in a correctional facility of the Commonwealth of Virginia. It remains to be seen if the question will be answered in his case. The immediate question on appeal is whether the district court erred in dismissing Baker's complaint against the District of Columbia for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon de novo review, *see Atchinson v. Dist. of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996), and taking the allegations in the complaint as true, *see Phillips v. Bureau of Prisons*, 591 F.2d 966, 968–69 (D.C. Cir. 1979), we hold that the district court erred in dismissing Baker's complaint by applying a subjective deliberate indifference standard to his claim that the District of Columbia had a policy or custom that caused the violations. We leave to the district court on remand to address the preclusive effect, if any, of judgments in the Eastern District of Virginia in a related case and, absent preclusion, to determine whether Baker's claim against the District of Columbia may proceed.

**I.**

For purposes of this appeal, it is undisputed that Baker, while serving a District of Columbia sentence was, at the

relevant times, incarcerated in the Greensville Correctional Center in the Commonwealth of Virginia. However, the record and the parties are unclear as to whether Baker was transferred to Greensville as a prisoner under the authority of the District of Columbia or the Federal Bureau of Prisons. *See* National Capitol Revitalization and Self–Government Improvement Act of 1997, Pub. L. 105–33, 111 Stat. 251, 712, 734–40. His complaint, including various amendments and supplementary pleadings, describes events between April 24, 2000, and April 24, 2001, when he was transferred from Greensville to a correctional facility in North Carolina. During almost all of that time, medical care at Greensville was provided by Corrections Medical Services ("CMS"), a private company under contract with the Virginia Department of Corrections; at other times Baker's allegations of inadequate medical care involved medical personnel who were state employees at Greensville.

According to Baker's complaint, he suffered two unrelated medical conditions during his incarceration at Greensville for which surgery was ultimately recommended. First, in April 2000 he developed a facial abscess and swelling on the left side of his nose and face that eventually closed 80% of his left eye and ultimately ruptured in April 2001. A CMS doctor initially told him it was a spider bite or perhaps a sinus infection but wrote in Baker's medical records that he was suffering from erysipilas, an acute disease of the skin marked by spreading inflammation and fever. X-rays were taken and Baker was given three days of antibiotics. Despite continued swelling and headaches he received no further treatment for eight months. In December 2000, after the condition worsened, he was informed that the abscess was a "sebaceous cyst." Medication was prescribed and Baker was told by medical personnel that if the knot did not go away he should see a dermatologist. During one of these consultations, three medical staff members laughed at Baker's confusion about his medical condition. A few weeks later, the CMS doctor changed her diagnosis a third time, advising the swelling was from bad root canal work. In the following weeks, when Baker sought help again as the condition continued, he was

told no doctor was available. Medical staff also improperly indicated in Baker's medical records that he was failing to attend scheduled appointments. Finally at the end of March 2001, after repeatedly requesting medical treatment, Baker was informed by another doctor at Greensville that surgery was indicated but he should wait until he was older and the abscess had spread to other parts of his face. In April, the abscess burst and continued to ooze for weeks.

Second, in August 2000, Baker injured his leg during a softball game and sought medical attention. Medical staff did not attend to Baker for over 45 minutes, despite his severe pain, and after X-rays were taken, he was returned to his cell without a wheelchair or pain medication. Two days passed before Baker received additional medical treatment and pain medication. At a second consultation with a CMS doctor, he was taken off bed rest and, without any detailed examination, told to exercise. After two more weeks, during which Baker was in pain, had a fever, and was without some of the prescribed pain medication, Baker was seen by a doctor and told the X-ray results were normal. Baker later fell down at work because of his leg injury; no report of this incident was provided to the medical staff. Despite filing numerous grievances with prison officials, Baker was not provided with access to specialists for additional treatment. In January 2001 the X-ray technician told Baker that X-rays would not help diagnose whether Baker had torn ligaments or cartilage and that he would have to see an orthopedist for a proper diagnosis. A CMS doctor responded that access to a specialist would require Baker to go through therapy first and that "opposition from the HMO and other officials makes even therapy difficult to obtain." Indeed, according to the doctor, "if inmates are not diabetics, HIV positive, or have high blood pressure the chances of getting more than minimal care is not going to happen and the result from the lack of care makes [the doctor] look like the villain to the inmates." Amended Complaint at 5. In February 2001, Baker finally was seen by an orthopedic specialist who told him that he probably had a torn cartilage that would require additional treatment. However, a nurse informed Baker that because of his imminent

transfer, any request for further treatment might well not be fulfilled.

Baker, proceeding *pro se*, filed suit in the United States District Court for the District of Columbia for declaratory and injunctive relief and damages under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights during his incarceration, under state common law for medical malpractice, and under the Interstate Corrections Compact, D.C. Code Ann. § 24–1001 (2001). He named as defendants the District of Columbia, the directors of the Federal Bureau of Prisons and the Virginia Department of Corrections, and six medical personnel, of whom some were employed by a private contractor, and prison administrators. The District of Columbia moved to dismiss the complaint under Rule 12(b)(6), and the district court granted the motion. According to the district court, proving the District of Columbia's liability would have required Baker to show that the District of Columbia was subjectively aware of Baker's medical needs, but because all of the individual defendants were either Virginia correctional officials or private contractors, this was not possible. The district court dismissed all claims against both the District of Columbia and the Federal Bureau of Prisons, and transferred Baker's claims against the Virginia defendants to the Eastern District of Virginia.

In the Eastern District, Baker amended his complaint to add and subtract defendants; the district court dismissed other defendants. The Virginia defendants first moved to dismiss Baker's claims based on the facial injury because of a failure to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The district court granted the motion, and thereafter denied Baker's motion for reconsideration, ruling in the alternative that there was no Eighth Amendment violation because the defendants' treatment of the facial condition was more akin to "medical malpractice" than "deliberate indifference." *Baker v. Dist. of Columbia*, Action No. 2:01cv472, at 2 & n.1 (E.D. Va., Jan. 30, 2002) (Order). The Virginia defendants then moved for summary judgment with respect to the leg claims, again arguing that any shortcomings in Baker's medical care were closer to

"medical malpractice" rather than to "deliberate indifference" under the Eighth Amendment; in September 2002, the Virginia district court granted that motion as well. *Baker v. Dist. of Columbia*, Action No. 2:01cv472 (E.D. Va. Sept. 27, 2002) (Opinion and Final Order). Baker appealed and the Court of Appeals for the Fourth Circuit affirmed "on the reasoning of the district court." *Baker v. Dist. of Columbia*, No. 02–7665 (4th Cir. Jan. 7, 2003) (unpub. op.).

In the meantime, Baker timely appealed to this court the dismissal of his § 1983 claim against the District of Columbia.

## II.

On appeal, Baker, assisted by amicus,[1] contends that the district court incorrectly analyzed his claim against the District of Columbia under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Essentially, he contends that the district court erred by confusing the "deliberate indifference" required to find an underlying Eighth Amendment violation by the Virginia defendants, which does require subjective knowledge, with the "deliberate indifference" required to find that the District of Columbia ignored the unconstitutional conduct of the Virginia prison officials to whom it had entrusted its prisoners, which only requires objective knowledge. He contends that under *Monell* he may state a claim against the District of Columbia based on a policy or custom without any analysis of the subjective state of mind of District of Columbia officials.

The distinction between the two "deliberate indifference" standards was drawn by the Supreme Court in *Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992). Accordingly, in considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry. *See Collins*, 503 U.S. at 120. First, the court must determine whether the complaint states a claim for a predicate constitutional violation. *Id.* Second, if so, then the court

---

[1] The court expresses appreciation to amicus for its assistance in this appeal.

must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation. *Id.*; *Monell*, 436 U.S. at 694. Each inquiry is separate and serves different purposes. *Collins*, 503 U.S. at 124; *see also Farmer v. Brennan*, 511 U.S. 825, 840–42 (1994); *City of Canton v. Harris*, 489 U.S. 378, 388 n.8 (1989).

Under the first prong, the district court should have addressed whether Baker's complaint stated a predicate claim of deliberate indifference by prison officials to Baker's serious medical needs in violation of his Eighth Amendment rights under *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To show deliberate indifference, Baker had to allege that officials had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk. *Farmer*, 511 U.S. at 837. In order to establish this predicate violation, neither District of Columbia policy makers nor employees need be implicated. All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm.

Under the second prong, the district court should have determined whether Baker's complaint stated a claim that a policy or custom of the District of Columbia caused the constitutional violation alleged under the first prong. *See Monell*, 436 U.S. at 694; *Harris*, 489 U.S. at 389. The court must determine whether the plaintiff has alleged an "affirmative link," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (op. of Rehnquist, J.), such that a municipal policy was the "moving force" behind the constitutional violation, *Harris*, 489 U.S. at 389 (quotation omitted). There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution, *see Monell*, 436 U.S. at 694–95; the action of a policy maker within the government, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–30 (1988); the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom," *id.* at 130; or the failure of the government to respond to a need (for example,

training of employees) in such a manner as to show "deliber-
ate indifference" to the risk that not addressing the need will
result in constitutional violations, *Harris*, 489 U.S. at 390;
*Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir.
2000). Deliberate indifference is determined by analyzing
whether the municipality knew or should have known of the
risk of constitutional violations, an objective standard.
*Farmer*, 511 U.S. at 841. Because the district court errone-
ously ruled that Baker had to prove subjective indifference by
the District of Columbia, it therefore improperly analyzed the
second prong.

The District of Columbia has not attempted to defend the
flawed rationale relied upon by the district court for dismiss-
ing the complaint. Rather, it contends that *Ali v. Dist. of
Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002), establishes that the
District of Columbia is not liable for the actions of the
Virginia correctional officials. However, as the District of
Columbia notes, the complaint in *Ali* did not allege a policy on
the part of the District of Columbia of sending inmates to
Virginia prisons that routinely mistreat inmates. *Id.*

Baker alleged in his complaint that the District of Columbia
has a continuing, nondelegable responsibility for him as a
D.C. resident serving a D.C. sentence to ensure that his
Eighth Amendment rights are not violated where the Virginia
Department of Corrections is serving as an agent for the
District of Columbia and the Federal Bureau of Prisons. He
further alleged that the Virginia officials violated his Eighth
Amendment rights by not properly investigating his com-
plaints about "the malicious and sadistic treatment [he] was
[receiving] from the medical staff at the Greensville Correc-
tion Center. . . ." Amended Complaint at 8. In opposing the
motion to dismiss, Baker argued that the violation of his
Eighth Amendment rights was "due to the . . . [District of
Columbia's] inadequate policies, procedures, and practices",
cited D.C. Code § 24–1001, and stated that had the District of
Columbia contract monitor done its job competently the
District of Columbia would had to have known that the
Virginia Department of Corrections has contracted out its
medical services to a notoriously "incompetent" health care

provider and had nonetheless "deliberately" allowed this to continue by not maintaining supervision.

In contending that these pleadings do not meet the standard of *Ali*, the District of Columbia maintains that they are "a really mixed bag in that one can read [them] in a directly opposite manner" such that there is no claim that there was a policy or custom under *Monell*. Appellee's Br. at 16. However, if a complaint alleging municipal liability under § 1983 may be read in a way that can support a claim for relief, thereby giving the defendant fair notice of the claim, that is sufficient. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1058 (D.C. Cir. 1998); *Atchinson*, 73 F.3d at 421–23. Thus, the District of Columbia has effectively conceded that Baker has stated a claim for relief. With that concession, there are no grounds advanced for supporting the dismissal of Baker's complaint.

The disposition of Baker's complaint is complicated, however, by the judgments of the district court in the Eastern District. On appeal, the District of Columbia invokes the defense of collateral estoppel in maintaining that, because of the Virginia judgments in favor of the named Virginia defendants, there is no basis for an award of damages against the District of Columbia based on the alleged Eighth Amendment violations. Understandably the District of Columbia first invoked the defense of collateral estoppel on appeal as the Virginia judgments were rendered after Baker's complaint had been dismissed and while his appeal was pending. But just as understandably, Baker contends that if this court remands because the district court failed to apply *Monell* correctly, the issue of preclusion should be addressed in the first instance by the district court because he has had no opportunity for discovery or to move to amend his pleadings.

The court will generally remand issues of collateral estoppel to the district court when they are raised for the first time on appeal. *See, e.g.*, *Fogg v. Ashcroft*, 254 F.3d 103, 110–11 (D.C. Cir. 2001); *Northwest Forest Res. Council v. Dombeck*, 107 F.3d 897, 901 (D.C. Cir. 1997). The appropriateness of a

remand is stronger when an appeal is pending of the decision that arguably warrants preclusive effect or where the record is unclear. *Martin v. Malhoyt*, 830 F.2d 237, 265 (D.C. Cir. 1987). On the other hand, the court would not necessarily remand in the context of a claim of res judicata "where there is no prejudice to the plaintiff, no forfeiture [of the res judicata issue] has yet occurred, the relevant facts stand uncontroverted in the record before us, and denial would only engender delay." *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997). These principles are no less relevant in the context of the "related" doctrine of collateral estoppel, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Although the Fourth Circuit has affirmed the Virginia district court judgments, we conclude that a determination in the first instance by this court of the applicability of collateral estoppel to Baker's claims against the District would be problematic. See *Dist. Props. Assocs. v. Dist. of Columbia*, 743 F.2d 21, 29 (D.C. Cir. 1984); *see also Blonder–Tongue Labs., Inc. v. Univ. Of Ill. Found.*, 402 U.S. 313, 350 (1971); *Fogg*, 254 F.3d at 111.

Resolution of the District of Columbia's collateral estoppel defense will require both an evaluation of the records of the Virginia proceedings, which the parties have agreed to file in the district court,[2] and a comparison of those records with Baker's claims in the instant case in order to determine whether any alleged Eighth Amendment violations survive even though the named defendants were exonerated. Having reviewed amicus' brief, we note that some of the contentions based on the records in the Virginia proceedings may not need to be addressed in order to resolve Baker's claims and others may require further factual development. These matters can be clarified in further pleadings and arguments by the parties in the district court.

Accordingly, because the district court erred by applying a subjective standard to Baker's *Monell* claim and resolution of his claim against the District of Columbia may depend on

---

[2] The records of the Virginia proceedings were not filed in this court until after briefing and oral argument had been completed.

additional pleadings and discovery in light of the records of the Virginia proceedings, we reverse and remand the case to the district court. On remand the district court can address the preclusive effect, if any, of the Virginia judgments, and absent preclusion, determine whether Baker's claim against the District of Columbia may proceed.