# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 7, 2014        Decided September 12, 2014

No. 12-7077

CHARLES SINGLETARY,
APPELLEE

v.

DISTRICT OF COLUMBIA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00752)

*Loren L. AliKhan*, Deputy Solicitor General, Office of the Attorney General for the District of Columbia, argued the cause for appellant. On the briefs were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, *Donna Murasky*, Deputy Solicitor General at the time the brief was filed, and *Mary L. Wilson*, Senior Assistant Attorney General.

*Stephen C. Leckar* argued the cause for appellee. With him on the brief were *Neal Goldfarb*, *Steven R. Kiersh*, and *Edward C. Sussman*.

Before: SRINIVASAN, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: The District of Columbia Board of Parole revoked plaintiff Charles Singletary's parole based primarily on unreliable multiple-hearsay testimony. This court later determined that the evidentiary basis for his parole revocation failed to satisfy the requirements of the Due Process Clause. Singletary then sued the District under 42 U.S.C. § 1983, alleging that the District bore responsibility for the Board's unconstitutional revocation decision. The district court found the District liable, and a jury awarded $2.3 million in damages for the period of Singletary's confinement following the revocation of his parole.

The District now appeals. The District argues that, under the standards for municipal liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), it cannot be held responsible for the Board's revocation decision. The District points out that it had no general policy or custom of basing parole-revocation decisions on evidence falling below the constitutional threshold for reliability. The District also denies that the Board's action in this case was that of a final policymaker in the area of parole revocation. We agree with the District that the Board's action cannot be attributed to the District in the circumstances presented here. We therefore vacate the judgment of the district court.

I.

A.

In the early 1980s, Charles Singletary was convicted of armed robbery and assault. *See Singletary v. District of Columbia* (Singletary I), 685 F. Supp. 2d 81, 83 (D.D.C. 2010). He received a sentence of nine to twenty-seven years

of imprisonment. In 1990, after serving more than seven years of his sentence, Singletary was released on parole. *Id.* In June 1995, he was arrested in connection with the murder of Leroy Houtman. *See Singletary v. District of Columbia* (Singletary II), 800 F. Supp. 2d 58, 60 (D.D.C. 2011). The prosecution dismissed the case at the preliminary hearing, and Singletary was released. *Id.*; *Singletary v. Reilly* (Singletary-habeas), 452 F.3d 868, 869 (D.C. Cir. 2006).

Although Singletary was never indicted in connection with the Houtman murder, the D.C. Board of Parole held a hearing a year later to consider revoking his parole based on his alleged participation in the crime. *Singletary-habeas*, 452 F.3d at 869. Singletary denied the charges against him. *See id.* As far as the available record shows, *see id.*, the Board heard testimony from a prosecutor and a police detective involved with the criminal investigation—neither of whom had first-hand knowledge of the relevant facts. *See Singletary II*, 800 F. Supp. 2d at 60. The prosecutor and the detective recounted statements made by two other witnesses, who were never identified during the hearing. *See Singletary-habeas*, 452 F.3d at 869-70. The unnamed witnesses themselves had no first-hand knowledge of the murder, but instead had reported conversations with a third witness that implicated Singletary. *Singletary II*, 800 F. Supp. 2d at 60. In August 1996, based primarily on that multiple-hearsay testimony, the Board revoked Singletary's parole. *Singletary-habeas*, 452 F.3d at 871.

Singletary subsequently sought habeas relief, filing his first application in 1997. The D.C. Superior Court denied his claims, and the D.C. Court of Appeals affirmed. *See Singletary v. Quick*, No. 97-SP-1984 (D.C. July 24, 1998) (unpublished order). After he filed a second application in 2000, the Court of Appeals again affirmed the Superior

Court's denial. *See Singletary v. D.C. Bd. of Parole*, 794 A.2d 56 (D.C. 2001) (unpublished table decision). Singletary next petitioned for a writ of habeas corpus in the U.S. District Court for the District of Columbia. *See Singletary v. D.C. Bd. of Parole*, No. CIV A 00–1263 RBW, 2003 WL 25258497 (D.D.C. Dec. 16, 2003). The district court denied the petition, finding that the hearsay evidence presented at the revocation hearing was sufficiently reliable. *See id.* at *3-5. Around that time, the D.C. Board of Parole was abolished and replaced by the United States Parole Commission, which was substituted as a defendant on appeal. *See id.* at *1 n.1; *Singletary-habeas*, 452 F.3d at 871 n.4.

This court then reversed and granted the habeas petition. *See Singletary-habeas*, 452 F.3d at 871-75. We noted that the Due Process Clause requires a hearing prior to parole revocation (although the hearing need not contain the full safeguards of a criminal trial). *See id.* at 871-72 (citing *Morrissey v. Brewer*, 408 U.S. 471, 487-88 (1972)). While there is no "per se" prohibition against relying on hearsay in revocation proceedings, "the burden [is] on the 'parole authorities to ensure, before relying on hearsay, that there are sufficient indicia of reliability under the circumstances at hand to protect the prisoner's due process rights.'" *Id.* at 872 (quoting *Crawford v. Jackson*, 323 F.3d 123, 128-29 (D.C. Cir. 2003)). After examining the "shoddy" record at Singletary's hearing, *id.* at 869, we found that "the hearsay presented . . . was not demonstrated to be reliable and that the Board's decision to revoke Singletary's parole was therefore 'totally lacking in evidentiary support.'" *Id.* at 873 (quoting *Crawford*, 323 F.3d at 129). As a result, the proceedings failed to "ensure fundamental due process rights." *Id.* at 874 (quoting *Crawford*, 323 F.3d at 128) (internal quotation marks omitted). We remanded for Singletary to receive a new revocation hearing. *Id.* at 875.

The U.S. Parole Commission held a new hearing in October 2006. The Commission determined that there was insufficient evidence to support finding a parole violation. *See Singletary II*, 800 F. Supp. 2d at 61. The Commission therefore reinstated Singletary to supervised release. *Id.*

B.

In 2009, Singletary sued the District of Columbia in federal district court, seeking monetary damages under 42 U.S.C. § 1983. *Id.* at 62. The complaint alleged that the District had "revoked [Singletary's] parole, and imprisoned him for ten years, based on unreliable multiple hearsay, in violation of Singletary's Fifth Amendment right to due process." J.A. 13. The District moved to dismiss the suit, contending that it could not be held responsible for the Board's revocation decision. Denying the motion, the district court held that Singletary had adequately pled municipal liability under § 1983 based on a theory that "the decision to revoke his parole was made by the 'final municipal decisionmaker and is therefore properly attributable to the municipality.'" *Singletary I*, 685 F. Supp. 2d at 83, 90 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)) (alterations omitted).

On cross motions for summary judgment, the district court granted partial summary judgment to Singletary on the question of liability. *See Singletary II*, 800 F. Supp. 2d at 59. In the district court's view, this court's habeas opinion had already established that the Board violated Singletary's due process rights when it revoked his parole. *See id.* at 60-61, 63 (citing *Singletary-habeas*, 452 F.3d at 868). The district court further held that the District was liable under § 1983 for the Board's unconstitutional revocation decision because the

"Board was the final policymaker for the District on matters of parole revocation" under D.C. law. *Id.* at 64. As a result, municipal liability could be imposed on the District for the Board's unconstitutional decision. *See id.* at 67-74 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

After a trial on damages, the jury awarded Singletary $2.3 million for his ten years of confinement. *See Singletary v. District of Columbia*, 876 F. Supp. 2d 106, 108 (D.D.C. 2012). The district court denied the District's request for a new trial. *See id.* at 122. The District now appeals the judgment against it.

## II.

As a threshold matter, the District contends that the district court lacked jurisdiction to hear Singletary's case due to the *Rooker-Feldman* doctrine. We conclude that the present suit is not within *Rooker-Feldman*'s "limited grasp." *Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011) (internal quotation marks omitted).

The *Rooker-Feldman* doctrine takes its name from the only two cases in which the Supreme Court has applied it: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). In both cases, the "losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment." *Skinner*, 131 S. Ct. at 1297 (footnote omitted). In both cases, the plaintiff in the federal suit "asked the District Court" to "review" and "overturn the injurious state-court judgment." *Id.* And in both cases, the Supreme Court held that the district court "lacked subject-

matter jurisdiction over such claims, for 28 U.S.C. § 1257 'vests authority to review a state court's judgment solely in [the Supreme Court].'" *Id.* (quoting *Exxon*, 544 U.S. at 292).

In the decades following the 1983 *Feldman* decision, some courts construed *Rooker* and *Feldman* "to extend far beyond the contours" of the two cases. *Exxon*, 544 U.S. at 283. The Supreme Court firmly ended this practice in its 2005 *Exxon* decision. Emphasizing the "narrow ground" occupied by the doctrine, the Court explained that *Rooker-Feldman* is "confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Id.* at 284. Put another way, the "doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, *see* [28 U.S.C.] § 1257(a)." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002). The doctrine otherwise has no effect on overlapping state and federal litigation, and it does not "override or supplant" other principles—like preclusion and abstention—that govern in such circumstances. *See Exxon*, 544 U.S. at 284, 292-93; *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam) ("*Rooker–Feldman* is not simply preclusion by another name.").

The Supreme Court's decision in *Exxon* exhibits the limited office of the *Rooker-Feldman* doctrine. The parties in *Exxon* litigated claims in federal court that they had already litigated to a judgment in state court. *See Exxon*, 544 U.S. at 289-90. Unlike the plaintiffs in *Rooker* and *Feldman*, who asked the federal court to "overturn" the "injurious state-court judgment[s]" themselves, the *Exxon* plaintiff did not seek to

"undo" the state-court judgment. *Id.* at 292-93. Instead, the plaintiff simply pursued parallel state and federal litigation of the same claims. *Rooker-Feldman* thus posed no obstacle to federal subject-matter jurisdiction. *See id.* at 293-94. The Court reaffirmed that understanding on similar facts in *Skinner*, where the plaintiff again did "not challenge the adverse [state-court] decisions themselves." 131 S. Ct. at 1298.

Singletary's litigation likewise "encounters no *Rooker-Feldman* shoal." *Skinner*, 131 S. Ct. at 1297. As in *Exxon* and *Skinner*, Singletary's suit does not seek to "review" or "undo" any D.C.-court decision. Rather, his § 1983 claim seeks review of a decision made by the Board of Parole—"an executive entity," not a court. *Singletary I*, 685 F. Supp. 2d at 92. *Rooker-Feldman* "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md.*, 535 U.S. at 644 n.3. The fact that the D.C. courts have ruled on habeas petitions related to (but ultimately different than) Singletary's current § 1983 claim is of no consequence for jurisdictional purposes. "'If a federal plaintiff presents an independent claim,' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Skinner*, 131 S. Ct. at 1297 (quoting *Exxon*, 544 U.S. at 292-93) (internal quotation marks and alterations omitted); *see Jensen v. Foley*, 295 F.3d 745, 747-48 (7th Cir. 2002) ("Preclusion," not *Rooker-Feldman*, "applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify."). And while the District now urges us (in a footnote) to apply issue preclusion to the D.C. courts' habeas decisions upholding the constitutionality of Singletary's parole revocation, the District forfeited any issue-preclusion argument by failing to raise it before the district

court. *See Nat'l Treasury Emps. Union v. IRS*, 765 F.2d 1174, 1176 n.1 (D.C. Cir. 1985).

We conclude, in short, that *Rooker-Feldman* posed no bar to the district court's jurisdiction over Singletary's § 1983 claim.

III.

On the merits, the District challenges the district court's grant of partial summary judgment to Singletary on the question whether the Board's revocation decision is attributable to the District. Reviewing the issue de novo, *see Douglas v. Donovan*, 559 F.3d 549, 551 (D.C. Cir. 2009), we hold that the District is not liable under § 1983 for the Board's decision.

Although a municipality is a "person" subject to suit under § 1983 for constitutional violations, 42 U.S.C. § 1983, it "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, it is only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Consequently, the court must determine whether "a policy or custom of the District of Columbia caused the constitutional violation alleged." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Monell*, 436 U.S. at 694; *Harris*, 489 U.S. at 389). Our decisions have identified various "ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983." *Id.*; *see Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008); *Warren v. District of Columbia*,

353 F.3d 36, 39 (D.C. Cir. 2004). None of those ways is demonstrated here.

Singletary does not allege that the District had any formal policy of revoking parole based on unreliable hearsay or other evidence falling below the requirements of the Due Process Clause. The relevant regulations permitted the Board to revoke parole only if it found a violation "by a preponderance of evidence." D.C. Mun. Regs. tit. 28, ch. 2, § 219.6. Courts have found that the preponderance standard itself incorporates a requirement that evidence "must meet a minimum threshold of reliability." *United States v. Trainor*, 376 F.3d 1325, 1333 (11th Cir. 2004). As a result, "the government cannot meet its burden, even under only a preponderance standard, with evidence that is speculative, unsupported, and unreliable." *United States v. Rivalta*, 892 F.2d 223, 230 (2d Cir. 1989) (internal quotation marks omitted). Singletary also makes no allegation that the Board had any informal custom or practice of basing revocation decisions on inadequate evidentiary bases. *See Warren*, 353 F.3d at 39; *Baker*, 326 F.3d at 1306.

Singletary contends that the District nonetheless bears responsibility for the Board's revocation decision because the Board was a final municipal policymaker in the area of parole revocation. As the Supreme Court has held, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-30 (1988) (plurality op.); *Baker*, 326 F.3d at 1306. *Monell*'s "'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Accordingly, if "the decision to adopt that

particular course of action is properly made by [the] government's authorized decisionmakers," it "represents an act of official government 'policy'" regardless of "whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481. But liability can attach only if the decision is made by a "municipal policymaker[]," *id.* at 480, i.e., one with authority to "establish governmental policy," *id.* at 481. Applying that approach, the Court in *Pembaur* found municipal liability based on a county prosecutor's one-time decision to instruct sheriffs to forcibly enter the plaintiff's place of business. *See id.* at 473, 476-77.

Here, by contrast, we are unable to conclude that the Board's revocation decision can be considered the action of a final policymaker for the District on matters of parole-revocation policy. The Board was a five-member body in the District's executive branch. *See* D.C. Code § 24-201.1(a); *Singletary I*, 685 F. Supp. 2d at 92. The Mayor possessed rulemaking authority to implement the statutory provisions governing the Board's exercise of its powers. *See* D.C. Code § 24-201.3. New rules had to be submitted to the D.C. Council for a sixty-day review period. *Id.* The Mayor designated one Board member to act as the Chairperson. *See id.* §§ 24-201.1(b), 24-201.2(c). At the time of Singletary's parole revocation, the Mayor had delegated his statutory rulemaking authority to the Chairperson. *See* Mayor's Order 89-10 (Jan. 6, 1989). With respect to revocation decisions in individual cases, the Board acted by majority vote assuming the presence of a quorum of three members. D.C. Code § 24-201.2(b). Singletary's parole revocation was effected by a three-member quorum (that did not include the then-Chairperson).

In these circumstances, the decision to revoke Singletary's parole based on evidence falling short of

constitutional standards was not "the action of a policy maker within the government." *Baker*, 326 F.3d at 1306. The Mayor possessed authority to establish rules governing the Board's proceedings, subject to disapproval by the D.C. Council; but there is no suggestion or allegation that the Board acted under direction of any such rule when it revoked Singletary's parole based on unreliable evidence. It is true that the Board possessed authority to render final revocation decisions in individual cases. *See* D.C. Code § 24-201.2(a)(4). But such discretion is insufficient to create municipal liability unless the decisionmaker had been granted final policymaking authority under D.C. law in the area of parole revocation. *See Pembaur*, 475 U.S. at 480-81; *id.* at 481-83 & n.12 (plurality op.); *see also Praprotnik*, 485 U.S. at 129-30 (plurality op.). Such authority was lacking here. Neither the Board as a whole nor the three-member quorum that revoked Singletary's parole was authorized to promulgate general rules or other policies. And while the Mayor delegated his rulemaking authority to the Chairperson, we have no reason to suppose that the Chairperson's rulemaking authority was subject to approval by the Board. The Chairperson, moreover, did not promulgate any pertinent rule for review by the D.C. Council. Even if the mere participation of the Chairperson in an individual revocation decision could suffice to constitute action by a District policymaker for purposes of municipal liability—an issue we do not reach—the Chairperson was not one of the three voting Board members in Singletary's case.

The Board thus was "constrained by policies not of [its] making," and its decision to "depart[]" from those policies by revoking Singletary's parole based on unreliable hearsay was not an "act of the municipality" for purposes of § 1983. *Praprotnik*, 485 U.S. at 127 (plurality op.). We therefore hold

that the District was entitled to summary judgment on the question of its liability.

\* \* \* \* \*

This court previously held that Singletary suffered a violation of his constitutional rights when the Board revoked his parole based on evidence lacking adequate indicia of reliability. He served a lengthy period in confinement pending the resolution of that constitutional claim. The issue we now confront, however, is the distinct one of whether "a custom or policy of the [District] caused the violation" of his constitutional rights for purposes of attributing the violation to the District. *Baker*, 326 F.3d at 1306. Answering that question in the negative, we vacate the judgment of the district court and remand for proceedings consistent with this opinion.

*So ordered.*