# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 23, 2018          Decided July 6, 2018

No. 15-5080

JOHN DOUGLAS CROLEY,
APPELLANT

v.

JOINT COMMITTEE ON JUDICIAL ADMINISTRATION,
APPELLEE

Consolidated with 15-5153

Appeals from the United States District Court
for the District of Columbia
(No. 1:15-cv-00175)

*Adele M. El-Khouri*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With her on the briefs was *Chad Golder.*

*John Croley*, *pro se*, was on the briefs for appellant.

*Adam Daniel*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. On the briefs were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, *Stacy Anderson*,

Acting Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General.

Before: GARLAND, *Chief Judge*, PILLARD, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  In 1985, John Croley brought a personal injury suit against the Republican National Committee (RNC) in the District of Columbia Superior Court after an RNC security guard physically assaulted Croley while he was photographing an overflowing dumpster near RNC headquarters.  *See Croley v. Republican Nat'l Comm.*, 759 A.2d 682, 686 (D.C. 2000).  A jury ruled in Croley's favor in 1998, awarding him a $1.2 million judgment against the RNC. In 2002, the RNC paid $1.37 million—that judgment plus interest—into the District of Columbia court system's coffers. Croley's lawyers promptly took their fee from that pot pursuant to an attorney's charging lien against the sum.  Croley himself, however, did not then receive the remaining $1.25 million. Croley did not get his money until 2015, thirteen years after the RNC had paid in full.

Croley here sues the Joint Committee on Judicial Administration, the administrative arm of the D.C. court system, seeking compensatory and punitive damages for what he alleges was the Joint Committee's role in the events causing that thirteen-year delay in receiving his payment.  After the RNC paid and counsel took their cut, Croley—suffering permanent and disabling injuries from the assault—was left unable to navigate the process of obtaining his money from the registry at the Superior Court.  The money the RNC paid to satisfy the judgment was in the court's possession as of 2002 but, Croley alleges, court administrators failed to release it to

him; they rebuffed his requests for assistance and for reasonable accommodations for his disabilities, and they misled him as to the funds' status. If the Joint Committee had requisite disability accommodation policies in place, Croley alleges, he would have had prompt possession of his damages award. Instead, Croley was deprived for more than a decade of funds meant to compensate him for, among other things, his lost earnings. And he spent significant time, expense, and energy over those many years in repeated, unsuccessful efforts to dislodge his judgment from the Superior Court—efforts that would have been entirely unnecessary, he contends, if the Joint Committee had fulfilled its legal obligations.

Croley, acting *pro se*, sued the Joint Committee in federal court for damages. He claimed that the Joint Committee violated his property rights and failed to comply with its affirmative obligations under federal law to accommodate disabled litigants. The district court *sua sponte* dismissed Croley's complaint for want of federal jurisdiction under the *Rooker-Feldman* doctrine. To the extent Croley's complaint calls for appeal of a District of Columbia court order issued in Croley's suit against the RNC, any such claim is barred by *Rooker-Feldman*. But *Rooker-Feldman* is no bar to those portions of Croley's federal complaint against the Joint Committee that do not seek to appeal orders in his Superior Court suit against the RNC: Neither Croley's claim that Superior Court administrative personnel violated his property rights by misleading him and mishandling his award, nor his claim that court administrators neglected their legal duty to make the courts accessible to persons with disabilities like his, necessarily calls for the federal courts to review any state court judgment. We therefore reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

4

I.

In his 1985 personal injury suit, Croley established that an RNC-employed security guard attacked him, inflicting post-traumatic stress disorder, chest trauma, and brain injuries that left him permanently disabled. *See Croley*, 759 A.2d at 686-88. Croley was photographing an overflowing trash dumpster on the street where he lived, planning to present the photos at an upcoming zoning meeting as evidence of a public sanitation problem, when he was approached by two security guards assigned to the RNC office building on an adjacent property. *Id.* at 686. The guards told Croley he was not permitted to engage in nighttime activities on that street. *Id.* Croley, believing he was acting within his rights on a public street, kept taking pictures. *Id.* One of the guards then assaulted and severely injured Croley. *Id.*

Croley filed suit against the RNC and the security guard in D.C. Superior Court. Following a seven-day trial in October 1998, *id.* at 698, a jury awarded Croley $1.2 million, *id.* at 689. In 2000, the D.C. Court of Appeals affirmed. *Id.* at 694, 703.

At this threshold procedural stage, we have a limited record chronicling the disconnect between Croley and the money the RNC paid to satisfy his judgment. We rely on Croley's *pro se* complaint, which we construe in the light most favorable to him, *see Brown v. Whole Foods Mkt. Grp.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (*Whole Foods*), and also refer to the rather sparse and obscure entries in the Superior Court docket in Croley's 1985 suit against the RNC, *see Veg-Mix, Inc. v. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987). *Pro se* complaints like Croley's must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also*

*Whole Foods*, 789 F.3d at 150, 152. We note that our description of Croley's claims makes no determination of their factual veracity or legal adequacy; our review is limited to the threshold question whether the types of claims Croley alleges are jurisdictionally barred for the reasons given by the district court.

After successful defense of his judgment in the D.C. Court of Appeals in 2000, *see Croley*, 759 A.2d at 694, Croley's relationship with counsel broke down. Croley alleges that, as early as January 2001, he tried to file a complaint against his counsel for failing to help him find and gain possession of the money the RNC had paid. Compl. ¶ 34(c)(ii). He sought and was denied assistance to do so from the Americans with Disabilities Act (ADA) coordinator at the D.C. Superior Court. *Id.* Croley's counsel in March 2001 filed an attorney's lien to secure his own fee from the judgment proceeds and moved to withdraw his appearance on Croley's behalf. The court recognized the lien and granted the motion to withdraw. Croley received the court's permission to proceed *in forma pauperis*.

The RNC in January of 2002 paid $1,367,012.37—Croley's jury award plus post-judgment interest to that date. The docket records a motion "for authority to deposit judgment proceeds into registry of court," which the court granted with the specifications that the RNC's payment satisfied the judgment and that defendants "are in no way responsible for the resolution of the fee dispute between [Croley] and [his] counsel." Appendix (App.) 87. Croley's counsel then moved to collect his fees, and the Superior Court distributed $115,579.39 to him in full satisfaction of the attorney's lien. Croley's damages apparently remained in possession of the court.

The docket reflects no further activity in Croley's Superior Court case for more than three years, at which point an entry states: "Converted Court Ordered Escrow as of May 19, 2005." App. 88. That entry records the "amount paid" as $1,251,432.98, App. 88, a sum equal to the RNC's payment minus the attorney's lien, without interest from the time the court took possession of the payment in 2002. Only a few months later, the docket states: "Unclaimed escrow funds transferred to the US Treasury on 9/27/05," with no further explanation or any suggestion that a court order directed such transfer. App. 88. The same docket entry then includes the notation "VOIDED UNDELIVERABLE." App. 88. Croley alleges that, in fact, "defendant Superior Court never conveyed plaintiff Croley's property to US Treasury," but instead "constantly possessed plaintiff Croley's property for itself, notwithstanding the misleading accounting reports and false statements of D.C. courts." Compl. ¶ 19(d) n.3.

Approximately two and a half years later, the docket shows that Croley, still acting *pro se*, sought possession of his money. On February 6, 2008, the Superior Court denied Croley's "Motion to Return Money Paid to Court Register." App. 88. Apparently recognizing that Croley's $1.2 million was unaccounted for, the court's order said in full:

> The Court cannot discern on the motion presented that the moving party is entitled to the funds. In addition the movant represents that the Court is no longer in possession of any funds. On this motion, the Court cannot find it has jurisdiction to order any return of funds that may now be in possession of the United States Treasury.

Order Den. Pl.'s Mot. to Return Money Paid to Ct. Register, 1985-CA-2075 (Feb. 5, 2008). Croley did not appeal that

order. According to the docket, activity in the case then ceased for five more years, until March 2013, when an attorney entered an appearance on Croley's behalf, only to withdraw just over a year later, with Croley still empty-handed.

Croley alleges that, all the while, he personally contacted the court repeatedly to collect his money, but administrative personnel misled him about its status and location. Compl. ¶¶ 19(d), 20. Court administrative staff, for example, "falsely advised" Croley to collect from the "Office of Unclaimed Funds," although his funds remained in the court registry. *Id.* ¶ 37. In his attempts to gain possession of his money, Croley also alleges that he—like other disabled litigants in the D.C. court system—was repeatedly denied disability accommodations such as extra time and easy-to-navigate procedures. *Id.* ¶¶ 30-31. In one such instance, Croley alleges, he asked the court's ADA coordinator to help him respond to his new attorney's 2014 withdrawal motion, but the coordinator did not "direct Plaintiff Croley to published grievance procedures" or otherwise assist him. *Id.* ¶ 34(c)(i).

Croley finally succeeded in bringing the matter to a head late in 2014. On September 17, Croley moved to "Restore Affirmed Judgment." App. 89. On November 24, 2014, Croley, again *pro se*, filed the federal suit at issue in this appeal. That same day—a dozen years after the RNC paid the judgment into the court registry and Croley first sought to collect it—the D.C. Superior Court scheduled a status hearing on the funds and issued a Notice of Intent to Release Funds, that is, to pay Croley his money. The United States and the District of Columbia responded to the D.C. Superior Court's Notice by affirmatively disclaiming any right or interest to the funds. On December 18, 2014, the court formally ordered disbursement. On January 14, 2015, nearly twenty years after he filed his personal injury suit in D.C. Superior Court and thirteen years

after the D.C. Court of Appeals sustained the verdict in his favor, Croley finally received the $1,251,432.98 the court had withheld: the total of the RNC's payment minus Croley's attorney's lien, without any interest for the time the D.C. Superior Court had possession of the money.

When the Superior Court ordered the disbursement, it described Croley's case against the RNC as "closed," and the court's own authority as limited to issuing the order calling for release from the court registry. The Superior Court judge added at the hearing: "[I]f [Croley] had an issue with what the Superior Court did, then [he was] free to file a lawsuit on that. But filing it as part of this closed case was not appropriate. Because the District of Columbia Superior Court would have to be a party to that action and that party needs notice." App. 111-12.

This case seeks to hold the Joint Committee responsible for the court administration's role in the long delay Croley faced between winning his award and receiving it. The Joint Committee on Judicial Administration, composed of judges, manages general personnel policies, accounts and auditing, and procurement and disbursement for the D.C. court system. *See* D.C. Code § 11-1701(b). As the Joint Committee itself explains, it bears the "general administrative responsibilities for the local District of Columbia Courts." Appellee's Br. at 2. Although the complaint interchangeably charges "DC Courts," the Superior Court, and the Court of Appeals with wrongdoing, it is fairly understood to refer to the courts insofar as they were inadequately administered by the Joint Committee, the entity the complaint names as "responsible for" the court system's "policies." Compl. ¶ 6; *see id.* ¶ 5.

Croley's *pro se* federal complaint raises two sets of claims. First, Croley claims the Joint Committee violated his property

rights. He alleges that the court system's retention of the money judgment he won and its interference with his access to that award violated his rights under the Due Process and Takings Clauses of the United States Constitution, and under District of Columbia law governing theft, conversion, and unclaimed funds. Compl. ¶¶ 9-21, 35-44. Second, Croley claims that during the many years he sought to collect his money, administrative personnel in the D.C. court system violated federal disabilities law, including the ADA and Section 504 of the Rehabilitation Act. *Id.* ¶¶ 23-34. He also alleges the court system failed to establish appropriate disability accommodation procedures, including by neglecting to affirmatively offer disabled litigants support or to conduct self-evaluations mandated by ADA regulation. *Id.* ¶¶ 25-26. For both sets of claims, the complaint seeks damages; it includes no plea for injunctive relief. *Id.* ¶¶ 21, 34(e), 44.

Before the Joint Committee filed any responsive pleadings, the district court, on January 30, 2015, *sua sponte* dismissed Croley's complaint. In a one-page opinion, it stated that "plaintiff asks this Court to review the rulings of the District of Columbia courts," but that the court lacked jurisdiction to do so under the *Rooker-Feldman* doctrine. *Croley v. Joint Comm. on Judicial Admin.*, 2015 WL 511355, at *1 (D.D.C. Feb. 4, 2015). Croley moved for reconsideration and sought recusal of the district court judge. The district court, with a new judge presiding because Croley's case was not initially assigned to a specific judge's docket, denied Croley's motion to reconsider, and denied the recusal motion as moot. *Croley v. Joint Comm. on Judicial Admin.*, No. 15-175, Docket No. 13 (D.D.C. Apr. 15, 2015). Croley, still *pro se*, appealed the court's *Rooker-Feldman* dismissal order. On appeal, amicus counsel filed supplemental briefing on Croley's behalf.

II.

This appeal presents a single, threshold question: whether the *Rooker-Feldman* doctrine bars Croley's federal complaint. *Rooker-Feldman*'s jurisdictional bar protects the Supreme Court's certiorari jurisdiction under Section 1257 of Title 28 of the United States Code. It ensures that the United States Supreme Court is the only federal court to hear appeals from judgments rendered by the highest court of a state (or, as here, the District of Columbia). *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *see also Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002). Operationally, the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by [i] state-court losers [ii] complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and [iii] inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). The Supreme Court has repeatedly emphasized that the doctrine is "narrow," applicable to bar only complaints that meet those listed conditions. *Id.*; *see Skinner v. Switzer*, 562 U.S. 521, 531 (2011); *Lance v. Dennis*, 546 U.S. 459, 464 (2006); *see also Singletary v. D.C.*, 766 F.3d 66, 71 (D.C. Cir. 2014). Indeed, the only two cases in which the Supreme Court has ever applied the doctrine to dismiss an action are the *Rooker* and *Feldman* namesake cases themselves. *See Exxon Mobil Corp.*, 544 U.S. at 283.

We review *de novo* the district court's dismissal of Croley's complaint on *Rooker-Feldman* grounds. *See Whole Foods*, 789 F.3d at 150. The district court had subject-matter jurisdiction over Croley's federal law claims under 26 U.S.C. § 1331, and supplemental jurisdiction over the related D.C. law

claims under 28 U.S.C. § 1367(a); we have jurisdiction to review the district court's decision under 28 U.S.C. § 1291. We consider first Croley's property claims, then his disability claims, to determine whether they are impermissible *de facto* appeals from D.C. courts' judgments. The Joint Committee contends that Croley's claims call for review of six identified orders: (1) the Superior Court's order barring evidence of brain injury as sanction for Croley's failure to timely submit to a physical examination and (2) the District of Columbia Court of Appeals order affirming it; and the Superior Court's orders (3) authorizing the RNC in 2002 to deposit funds in satisfaction of the judgment; (4) disbursing money to Croley's former attorneys in 2002 pursuant to the attorney's lien; (5) denying in 2008 Croley's motion to release the funds for want of information about his entitlement and the funds' location; and (6) denying in 2014 Croley's motion for an extension of time to oppose his attorney's withdrawal motion. The Joint Committee does not contend that Croley's complaint challenges any other orders of the Superior Court or Court of Appeals.

We reject the Joint Committee's theory and reverse and remand to the district court because *Rooker-Feldman* does not bar Croley's claims: (i) He was a state-court winner, not a loser. (ii) The harms of which the current suit complains flow, not from any District of Columbia court judgment, but from administrative handling of money the RNC paid to the court in final satisfaction of a judgment. (iii) Croley's case seeks review and rejection not of any state-court judgment, but of the adequacy under property and disability law of court administrators' handling of funds entrusted to them on Croley's behalf after the state court entered its judgment. *See Exxon Mobil Corp.*, 522 U.S. at 284.

12

A.

Croley first alleges that the Joint Committee violated his property rights by retaining and failing to distribute to him the money judgment he won and the RNC paid to the court registry. The court deemed the RNC's tort judgment satisfied, it paid out a portion of Croley's winnings to counsel to cover his fee, but then retained the balance of the funds for more than thirteen years. No District of Columbia court order required court administrators to withhold Croley's money from him, and no such order is on appeal here.

Croley rests his property claims on both D.C. law and the United States Constitution. He brings common-law claims for conversion and theft, Compl. ¶ 43, as well as for violation of the D.C. unclaimed funds law, D.C. Code § 41-101 *et seq.*, which calls on the city to take possession of unclaimed property and to notify the property's owner, *id.* §§ 41-118, 41-120; Compl. ¶ 37. Croley also alleges that the Joint Committee violated the Due Process and Takings Clauses of the United States Constitution when courthouse personnel obfuscated the location of his funds, thus effectively "seiz[ing]" them and "disrupt[ing]" his access to them. *See* Compl. ¶¶ 13, 20. Those claims are based on Croley's allegation that administrative personnel in the D.C. court system "falsely advised" him to collect his award from an "Office of Unclaimed Funds" and otherwise failed to meet statutory obligations. *Id.* ¶ 37. He seeks "punitive damages, costs, interest and fees as allowed by law." *Id.* ¶ 21.

The *Rooker-Feldman* doctrine bars review only of judicial orders, *see Feldman*, 460 U.S. at 486, but Croley's challenge is to administrative conduct, not any judicial order. When "the proceedings giving rise to the rule are non-judicial[,] the policies prohibiting United States District Court review of final

state-court judgments are not implicated" and "28 U.S.C. § 1257 does not act as a bar to the District Court's consideration of the case." *Feldman*, 460 U.S. at 486; *see also Singletary*, 766 F.3d at 72; *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997). The Joint Committee at oral argument recognized that if the D.C. Clerk's Office or other administrative entities misled Croley regarding the whereabouts of his property, such misdeeds would not be barred by *Rooker-Feldman*. *See* Oral Arg. Tr. 48:15-50:12, 61:8-14. Croley's complaint on its face challenges precisely such administrative misdeeds. Compl. ¶¶ 19, 19(d).

Croley's property claims arise out of allegations of false and misleading conduct by the Clerk's Office or other administrative staff: "DC Courts persistently [misled] plaintiff Croley and various attorneys as to the location and status of plaintiff Croley's property," including when "DC Courts falsely advised [they] had conveyed plaintiff Croley's property to the 'US Treasury' without further specification." Compl. ¶ 19(d); *see id.* ¶ 37. Croley plausibly alleges that he contacted court administrators several times after the Court of Appeals affirmed the tort award in his favor and the court registry accepted payment in his behalf. *See id.* ¶ 19(d). As described above, each time Croley attempted to collect the money, the registry retained it and, each time, the disbursement process failed him. It is the actions of administrators, outside and independent of D.C. judicial proceedings, that Croley alleges frustrated collection of that judgment. Those actions do not implicate *Rooker-Feldman*'s bar.

The Joint Committee's assertion that Croley seeks reversal of the Superior Court's 2008 order denying his request for disbursement is unconvincing. The 2008 order, which stated that the $1.2 million was lost to court records, could indeed be appealed only to the D.C. Court of Appeals or ultimately to the

Supreme Court. Croley's complaint, though, invokes that order only by way of background. *See* Compl. ¶ 18. The complaint does not seek to appeal the order itself—in fact, the Superior Court's 2015 disbursement order has already superseded the 2008 order denying payment, and Croley by no means asks to collect his judgment anew from the RNC. To the contrary, Croley here raises independent claims about administrators' conduct; those claims are not barred even to the extent that he seeks in the process to "den[y] a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil Corp.*, 544 U.S. at 293. Conflict between a conclusion of the state court and an independent claim against a different defendant in federal court might call for some sort of preclusion analysis once the court asserts its jurisdiction, but not the *Rooker-Feldman* jurisdictional bar. *Id.*

Croley's property claims against the Joint Committee call for neither federal review nor reversal of any D.C. court order entered in his wholly distinct, closed tort case against the RNC. After all, Croley won in state court. That court entered final judgment in his favor. Croley's property claims against the Joint Committee allege different harms from the assault-based claims at issue in his suit against the RNC. They seek to enforce his legal rights against a different defendant, and seek a different remedy. Accordingly, lower federal court review of Croley's property claims is not an effort to appeal the D.C. court's judgment and is not barred by *Rooker-Feldman*.

## B.

Croley's second set of claims alleges that, in his effort to gain possession of money paid to the court registry to satisfy his state court judgment, he was harmed by the D.C. court system's lack of the requisite policies and procedures for disability accommodation. He alleges, in particular, that the

Joint Committee failed to meet its "affirmative obligation" under the ADA and the Rehabilitation Act "to accommodate persons with disabilities in the administration of justice" during the underlying litigation and, more importantly, award payment. *Tennessee v. Lane*, 541 U.S. 509, 533 (2004); *see* Compl. ¶¶ 23-28; *see also* Americans with Disabilities Act, 42 U.S.C. §§ 12131-34; Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Croley also alleges the Joint Committee failed to meet its obligations under the ADA's implementing regulations: He complains that it followed neither the self-assessment requirements imposed by 28 C.F.R. § 35.105, *see* Compl. ¶ 25 n.4, nor the requirement to designate an ADA coordinator and to create grievance procedures per 28 C.F.R. § 35.107, *see* Compl. ¶ 34(c). For the Joint Committee's failure to establish an appropriate disability accommodation "policy," *id.* ¶¶ 5, 30, 34(b), Croley seeks damages, *id.* ¶ 34(e).

These claims, too, are not barred by *Rooker-Feldman*. As the Supreme Court made clear in *Feldman*, lower federal courts may review a "general challenge" to an administrative rule or policy without impermissibly reviewing or reversing a particular state court judgment that assumed the policy was valid. 460 U.S. at 483; *see id.* at 484-86; *Stanton*, 127 F.3d at 75-76 (recognizing that review of "general challenges" is "permissible" when it does not functionally compel reversal of specific state court decisions). Croley's federal disability claim "does not seek to 'review' or 'undo' any D.C.-court decision." *Singletary*, 766 F.3d at 72. It instead challenges alleged shortfalls in the Joint Committee's administrative policies.

As discussed, Croley claims the Committee lacked requisite policies for responding to and assisting *pro se* litigants with cognitive or emotional disabilities. *See, e.g.*, Compl. ¶¶ 25-27. He alleges that "DC courts regard[] disability accommodation as a contested issue, to be repeatedly

determined and re-determined as a matter of ongoing controversy throughout the course of each action before DC Courts." *Id.* ¶ 34(b); *see id.* ¶ 34(d). A court system in compliance with its affirmative federal obligations, Croley contends, would have as a matter of course afforded disabled litigants like him appropriate accommodations and would have published "clear, simple . . . procedures" for navigating the court's requirements. *Id.* ¶ 30. Croley's complaint provides several "specific examples," *id.* ¶ 34, of administrative failures to meet those obligations, including court administrators' refusal to help him understand and access procedures for filing grievances against counsel and make various other complaints, *see id.* ¶¶ 34(c)(i)-(ii).

The Joint Committee artificially construes Croley's disability claims as limited to those specific examples and mischaracterizes Croley's claims as appeals of adverse rulings in an attempt to cast this case in *Rooker-Feldman*'s mold. *See* Appellee's Br. 27-30; Oral Arg. Tr. 53:16-19; *see also* Compl. ¶ 34. The Committee invokes two rulings in particular: The Superior Court, as a sanction for Croley's failure to timely submit to a physical examination, prohibited Croley from introducing evidence of his brain injury, *see* 759 A.2d at 686-88, 696-702, and the court refused to grant him an extension of time to respond to his counsel's withdrawal motion, *see* App. 88. If Croley's complaint were a challenge to those orders, *Rooker-Feldman* could conceivably bar federal review.

As discussed above, however, Croley's complaint expressly makes a broader, general challenge to the District of Columbia courts' policies, Compl. ¶¶ 5, 30, 34(b), based on distinct harms it caused him: making it unduly hard for him, with his disabilities, to participate effectively in the litigation, and causing his property to be long withheld from him without clear means reasonably accessible to him for gaining

possession of it. The Joint Committee recognized at argument that Croley's complaint "clearly" levies "general policy-like" challenges, independent of challenges to specific D.C. court orders. *See* Oral Arg. Tr. 54:4-11; *see also id.* at 51:10-54:11, 47:18-48:2. The different party he sues and the distinct damages he seeks confirm that federal review of his challenge to the court's disability policies would not disturb the state court's orders. *See Gray*, 275 F.3d at 1119. Croley seeks damages from the Joint Committee for the physical and emotional costs he alleges he incurred navigating a court system bereft of appropriate accommodations; the complaint can be read to allege such harms both during the litigation against the RNC and in the period after its conclusion when Croley sought to gain access to his money. Another measure of his damages might be the time value of the $1.2 million since 2002—after the RNC paid, while the court system withheld it—which he could not have received in his suit in D.C. court, but which he claims he would have accrued on his own account had requisite procedures been in place.

Whether those damages are available, and in what measure, turns largely on what the ADA guarantees to litigants in Croley's position. That question, however, speaks to the merits of Croley's claim rather than to whether lower federal courts have jurisdiction to assess it. To be clear, to the extent Croley's complaint seeks damages based on counterfactual court victories Croley might have won against the RNC had the court not denied him enlarged time or limited his proof of brain injury, *Rooker-Feldman* is a bar. But Croley has pleaded a distinct federal claim challenging the Joint Committee's failure to afford ADA-compliant accommodation to disabled litigants. The ADA "authorizes private citizens to bring suits for money damages," *Lane*, 541 U.S. at 517 (citing 42 U.S.C. § 12133), and Croley's complaint that the Committee lacked procedures to reasonably accommodate cognitively or emotionally

disabled litigants would, if meritorious, be remediable. The question of whether such claims would succeed on the merits presents no jurisdictional *Rooker-Feldman* problem.

### III.

The Joint Committee maintains that, even were we to reverse the district court's *Rooker-Feldman* ruling, we should affirm its dismissal of Croley's complaint on non-jurisdictional grounds, such as judicial immunity, preclusion, or failure to state a legally cognizable claim including, for example, whether Croley would have a private right of action under the ADA's implementing regulations. We decline to reach those issues. We therefore reverse the district court's threshold jurisdictional dismissal and remand for the district court to consider the complaint anew. Motions to amend the complaint, or to dismiss it on grounds other than *Rooker-Feldman*, are for the district court to consider in the first instance on remand.

*So ordered*.